No. 87-291

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

_____

ACCOUNTS MANAGEMENT CORP., a
corporation,

        Plaintiff and Respondent,

   -vs-

LYMAN RANCH, a corporation, and
HOWARD F. LYMAN,

        Defendants and Appellants.

_____

APPEAL FROM:  District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Thomas McKittrick, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        J. Daniel Hoven; Browning, Kaleczyc, Berry & Hoven,
Helena, Montana

    For Respondent:

        J. Vaughan Barron, Great Falls, Montana

_____

Submitted on Briefs:  Oct. 16, 1987

Decided:  December 31, 1987

Filed: 1987

_____
Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

Howard Lyman appeals the judgment of the District Court of the Eighth Judicial District dated April 7, 1987. We affirm.

The lower court's judgment concerns a debt incurred by Lyman Ranch Corporation (Lyman Ranch). Howard Lyman owned the majority of stock in Lyman Ranch, and acted as Lyman Ranch's representative. The suit, originally brought by Farmers Union Oil of Great Falls (Farmers Union), named Howard Lyman and Lyman Ranch Corporation as defendants.

The debt springs from a charge account. For several years Lyman Ranch had charged ranch operating expenses at Farmers Union. In the fall of each year Lyman Ranch utilized funds from a loan obtained from the Production Credit Association (PCA) to pay the Farmers Union debt. In 1981, however, the PCA denied Lyman Ranch's loan application and reapplication, and the Farmers Union debt went unpaid.

In December of 1981 Howard Lyman met with Farmers Union representative John Boysun to discuss the debt. Lyman told Boysun that he would personally guarantee that everything that could be done would be done to pay off the account, and that there was a possibility that the ranch would have to be sold to satisfy its obligations to creditors. Lyman also assured Boysun that the value of the ranch exceeded its liabilities.

Boysun wanted to document Lyman's acknowledgement of the debt and his guarantee for payment. To that end, Boysun's associate, James McDonald, drafted the following document entitled "CHECK-NOTE":

# CHECK-NOTE ~~AND~~ ~~REPORT~~ ~~SHEET~~

Date December 16, __, 1981                   (Print or Type)   Co-op Account No.                    20998

| CUSTOMER (Debtor): | COOPERATIVE (Creditor): |
|---|---|
| Name LYMAN RANCH | Name FARMERS UNION OIL CO. of GREAT FALLS, MT. |
| Address RR 2155 | Address P O BOX 2483 |
| GREAT FALLS, MONTANA 59401 | GREAT FALLS, MONTANA 59403 |
| City        State        Zip Code | City        State        Zip Code |

| account No. | acct Date | Description | Amount |
|---|---|---|---|
| 561-908 | 11-24-81 | Account balance as of 11-24-81 | $ 93,079.78 |
| | | less payment applied | (3,994.60) |
| | | Net of Account | 89,085.18 |
| 561-764 | 11-24-81 | Deferred Fertilizer account balance as of 11-24-81 | 24,609.92 |

| | | |
|---|---|---|
| PROCEEDS | | $ 113,695.10 |
| Plus: Other Charges (Itemize) | | |
| Amount Financed | | $ 113,695.10 |
| Plus: **FINANCE CHARGE** (Interest) **FINANCE CHARGE** begins to accrue on 11-25-1981 | | 7382. 39 |
| Total of Payments (Check-Note Amount) | | $ 121,077.49 |

**ANNUAL PERCENTAGE RATE** 15% REPAYMENT - Total of Payments (C.-N. Amt.) is payable on 6-1- 1982
PREPAYMENT—The Check-Note Amount may be paid in full any time prior to the due date without penalty and any unearned **FINANCE CHARGE** will be refunded based on the "Rule of 78," computed as of the nearest installment due date, in accordance with applicable law.
DEFAULT CHARGE—The Check-Note shall be presented on the date specified to the bank named in the Check-Note. If it is not honored, the Check-Note shall be in default and the maker(s) agree to pay all costs of collection, excluding Attorneys Fees, and interest may be assessed by applying a rate of 18 % per annum to the amount due at maturity for the period of time after maturity until collected.
The Cooperative (Creditor) pursuant to its Articles of Incorporation or By-Laws has a first lien on the capital stock of the cooperative held by the Customer (Debtor) for any debt due it by the Customer.
Customer acknowledges ******* ******* the above described accounts and a copy of this disclosure statement.
NOTICE TO CUSTOMER—DO NOT SIGN THIS DOCUMENT UNTIL YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. YOU HAVE A RIGHT TO A COPY OF THIS DOCUMENT AND ALSO A RIGHT TO PREPAY THE FULL AMOUNT AND OBTAIN A PARTIAL REFUND OF THE

FARMERS UNION OIL      **FINANCE CHARGES**
CO. of GREAT FALLS, MT.                        LYMAN RANCH
By: _[signature]_ ,General Manager By: _[signature]_ 12-23-81
    Signature of Cooperative (Creditor)           Signature of Customer (Debtor)        Date
FORM 131

---

No. 20998

Bank at GREAT FALLS, MONTANA

FOR VALUE RECEIVED, I PROMISE TO
PAY TO FARMERS UNION OIL CO. OF GREAT FALLS, MONTANA          $ 121,077.49

One Hundred-Twenty One Thousand-Seventy Seven AND 49/100----------------Dollars

It is further agreed that the amount of this instrument will be paid by the maker(s) on or before June 1 ,
19 82 . If it is not honored, this Check-Note shall be in default and the maker(s) agree to pay all costs of collection, excluding Attorneys Fees, and interest may be assessed by applying a rate of 18 % per annum to the amount due at maturity for the period of time after maturity until collected.

_[signature]_

Address

PLAINTIFF'S EXHIBIT # 2
PENGAD-Bayonne, N.J.

3

A week after the conversation which lead to the drafting of the "CHECK-NOTE", Boysun presented it to Lyman, and both individuals signed the document. Their signatures appear together midway down the document following the recording of the amount owed on the open account and the terms for payment of the account. Lyman's signature also appears at the end of the document following an unconditional promise to pay $121,077.49, on or before June 1, 1982.

Lyman's first signature shows that he signed in his capacity as a corporate representative. The type written word "By" precedes the signature, the signature appears beneath the heading of "Lyman Ranch", and following the signature Lyman penned the word "Sec." to signify his office as secretary of the corporation. The second signature by Lyman, however, appears without any reference to Lyman Ranch or the signatory's capacity.

On June 1, 1982, the debt went unpaid, and on April 12, 1984, Farmer's Union brought suit to collect the debt. The defendants answered the complaint on June 11, 1984. Lyman Ranch admitted it owed the amount specified in the complaint, but Howard Lyman denied personal responsibility for the debt. The issue of Howard Lyman's personal responsibility on the debt went to trial on September 25, 1986. Prior to trial Farmers Union assigned its rights against the defendants to Accounts Management.

The lower court entered the judgment at issue on April 7, 1987. The judgment was based on the court's conclusion that Howard Lyman undertook a promise to pay the debt in an individual capacity rather than a corporate capacity. The lower court supported this conclusion by finding that the promise to pay in the bottom of the "CHECK-NOTE" constituted a promissory note which unambiguously showed that Lyman acted in a personal capacity. The lower court also found from

4

trial testimony that Boysun and Lyman were sophisticated businessmen, and that in return for Farmers Union's forbearance from collection efforts, Lyman agreed to assume personal liability for the debt. Lyman contended in the lower court that Farmers Union wanted the "CHECK-NOTE" as collateral to finance its own debt. At trial testimony showed that Farmers Union employed similar documents for debt security in its borrowing from the Bank of Cooperatives.

Lyman raises the following issues on appeal of the judgment: (1) Did the District Court err as a matter of law in its construction of the check-note? (2) Is the District Court's construction of the check-note supported by substantial evidence? (3) Is the District Court's conclusion that the check-note was unambiguous supported by substantial evidence? (4) Should this Court reverse the judgment of the District Court and institute a proper judgment that Howard Lyman is not personally responsible for the debt of Lyman Ranch Corporation?

We will not consider the issues in order. First we will consider the law and evidence surrounding construction of the "CHECK-NOTE" as framed by Issues 1 and 3. The following and final section of this opinion considers Issue 2 and moots Issue 4.

Issues 1 and 3, Construction of the "CHECKNOTE": Lyman argues that the District Court's characterization of his promise to pay as a promissory note violates rules of contract construction. According to Lyman, when viewed as an integrated part of the whole document, the promise to pay does not unambiguously show a personal undertaking to pay the debt. We agree with the District Court's conclusion that the promise to pay constitutes a promissory note. The bottom half of the "CHECK-NOTE" containing Lyman's unconditional promise to pay a sum certain at a definite time constitutes

5

an instrument under § 30-3-104, MCA, and the fact that the inventory of the debt is attached above the promise does not affect the nature of the promise.

However, by statute, as between the immediate parties, the document creates an ambiguity in regard to the second signature. See § 30-3-403, MCA. In particular, § 30-3-403(2), MCA, provides:

> An authorized representative who signs his own name to an instrument:
> (a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;
> (b) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity. (Emphasis added.)

Subsection (b) of § 30-3-403(2), MCA, applies to the signature at issue in this case. Accounts Management should be treated as an immediate party under § 30-3-403(2), MCA. See Moore v. White (Okla. 1979), 603 P.2d 1119. Moore concerned the issue of whether a guarantor to a note was an immediate party under Oklahoma's adoption of § 3-403, U.C.C. The Court in Moore held that the guarantor stepped into the shoes of the creditor, and thus in a suit between the guarantor and the maker of the note, the guarantor was an immediate party under the statute. Accounts Management stepped into the shoes of Farmers Union when the case was postured for trial, and its rights derived not from negotiation of the note at issue, but from a separate agreement with Farmers Union. Under these circumstances, Accounts Management cannot claim greater rights than Farmers

6

Union, and is subject to Lyman's defenses against Farmers Union. See also Guaranty National Bank v. Beaver (Okla. 1987), 738 P.2d 1336.

Subsection (b)'s additional prerequisites are also met in this case. The instrument's upper portion names Lyman Ranch, but the signature on the lower portion does not show that Lyman signed in a representative capacity. In this situation, the issue of who is obligated by the note becomes a question of fact for the trial court. See Clarks Fork National Bank v. Papp (Mont. 1985), 698 P.2d 851, 853, 42 St.Rep. 577, 580. And in resolving this issue, subsection (2)(b) "admits parol evidence in litigation between the immediate parties to prove signature by the agent in his representative capacity". Uniform Commercial Code (U.L.A.) § 3-403 official comment (1977). Thus, the lower court incorrectly concluded that Lyman's signature unambiguously imparted personal liability.

However, the lower court also heard evidence and made findings concerning the parties' intentions. That is all that § 30-3-403(2)(b), MCA, mandates under these circumstances, and we will affirm on the basis of these findings if they are supported by substantial evidence.

ISSUES 2 and 4: Howard Lyman testified that when he personally guaranteed that everything that could be done would be done to satisfy the debt, his statements referred to efforts in a corporate capacity, not to a desire to become personally liable on the debt. Boysun testified that he relied on Lyman's personal guarantee for ordering the preparation of the "CHECK-NOTE", and according to Boysun and the "CHECK-NOTE"'s drafter, McDonald, the parties intended to impart personal liability to Lyman.

The lower court's finding that the parties intended to make Lyman personally liable must be supported by substantial

7

evidence. Miller v. Watkins (1982), 200 Mont. 455, 461, 653 P.2d 126, 129. Substantial evidence "'is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Bushnell v. Cook (Mont. 1986), 718 P.2d 665, 668, 43 St.Rep. 825, 828 (quoting State v. Plouffe (1982), 198 Mont. 379, 389, 646 P.2d 533, 538). And this Court must give due regard "to the opportunity of the trial court to judge of the credibility of witnesses." Rule 52(a), M.R.Civ.P. Boysun's testimony, and the fact that Lyman added "Sec." after his first signature, and omitted any reference to his capacity in the second signature, provide substantial evidence to support the lower court's findings and conclusions on the intentions of the parties. Thus we affirm.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

8