No. 95-465

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996


MARTIN CARELLI,

      Plaintiff and Respondent,

   v.

STANLEY E. HALL, GREGORY L.
STIRES, and DALE P. STIRES,

      Defendants and Appellants.

FILED

NOV 14 1996

CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM:  District Court of the Eighteenth Judicial District,
              In and for the County of Gallatin,
              The Honorable Larry W. Moran, Judge presiding.


COUNSEL OF RECORD:

        For Appellants:

            Michael K. Rapkoch; Felt, Martin , Frazier &
            Nelson, Billings, Montana

        For Respondent:

            Rienne H. McElyea; Berg, Lilly, Andriolo &
            Tollefsen, Bozeman, Montana


                 Submitted on Briefs:  June 27, 1996

                         Decided:  November 14, 1996

Filed:

                          Clerk

Justice Karla M. Gray delivered the Opinion of the Court

Gregory and Dale Stires appeal from the judgment of the Eighteenth Judicial District Court, Gallatin County, awarding Martin Carelli $77,381.08 in damages, costs and attorney's fees in his action on a promissory note and from the underlying order denying their motion for summary judgment. We reverse and remand.

The dispositive issue on appeal is whether the District Court erred in denying Gregory and Dale Stires' motion for summary judgment.

*Factual Background*

Gregory and Dale Stires (collectively, Stires) and Stanley Hall (Hall) owned and operated the Elk Valley Game Ranch (Game Ranch) as partners beginning in 1986. The partnership originally was formed pursuant to an oral agreement; however, Stires and Hall executed a written partnership agreement with regard to the Game Ranch in 1987.

In June of 1986, Hall purchased thirty-eight head of elk from Martin Carelli (Carelli). He signed a promissory note agreeing to pay Carelli $36,000 by December 20, 1986, for the elk. The promissory note refers solely to Hall as the purchaser and contains no reference to Stires or the Game Ranch. Hall also signed a security agreement covering the elk purchased from Carelli. The security agreement names, and is signed by, Hall as the debtor; it reflects that the elk will be kept at the Game Ranch and will be used for business purposes. Finally, Carelli and Hall signed, and

Carelli filed, a Uniform Commercial Code (UCC) financing statement identifying Hall as the debtor and the elk as the collateral.

Stires and Hall dissolved their partnership in 1988. Pursuant to the partnership dissolution agreement, Stires would continue to operate the Game Ranch. The dissolution agreement listed the partnership debt and divided it between Stires and Hall. The debt attributable to the promissory note executed by Hall in Carelli's favor was not listed.

*Procedural History*

After Hall failed to pay Carelli pursuant to the promissory note, Carelli sued Hall for the principal and interest owing on the note, together with costs and attorney's fees. Hall answered, denying liability on the promissory note. He also filed a third-party complaint against Stires alleging that, pursuant to the partnership dissolution agreement, Stires was obligated to pay Carelli the debt evidenced by the promissory note. In response to Hall's third-party complaint, Stires denied liability for the debt, arguing that the debt evidenced by the promissory note was Hall's personal obligation and, therefore, Stires could not be held liable for it.

Stires attempted to depose Hall on three occasions. The first two dates were rescheduled and Hall failed to appear for the third. Thereafter, Carelli moved for summary judgment against Hall pursuant to Rule 56(c), M.R.Civ.P., as well as for entry of judgment in his favor against Hall as a Rule 37 sanction for Hall's failure to appear at the depositions. Stires also moved for Rule

3

37 sanctions against Hall, requesting the court to dismiss Hall's third-party complaint.

The District Court concluded that no genuine issues of material fact existed regarding Hall's liability on the promissory note and granted summary judgment in favor of Carelli. In addition, the court granted Rule 37 sanctions against Hall in favor of both Carelli and Stires and, accordingly, entered judgment against Hall in Carelli's favor and dismissed Hall's third-party complaint against Stires. The District Court then permitted Carelli to amend his complaint, pursuant to Rule 15, M.R.Civ.P., to assert a claim against Stires for liability on the debt evidenced by the promissory note Hall executed. Stires answered, denying liability on the note, and both Stires and Carelli conducted discovery.

Stires subsequently moved for summary judgment against Carelli, arguing that the promissory note, security agreement and financing statement clearly and unambiguously identified Hall as the sole debtor on the note. Thus, according to Stires, no genuine issues of material fact existed regarding whether Stires was a debtor liable on the note and Stires was entitled to judgment as a matter of law under UCC, contract and partnership principles.

Carelli opposed Stires' motion. After oral argument on Stires' summary judgment motion, the District Court determined that genuine issues of material fact existed and Stires was not entitled to judgment as a matter of law. It provided no further explanation or analysis of its denial of the motion.

4

Following a bench trial, the District Court entered findings of fact and conclusions of law determining that Hall was authorized to--and did, in fact--purchase the elk on behalf of the partnership and, therefore, that Stires was liable on the promissory note. The court entered judgment accordingly and Stires appeals.

Did the District Court err in denying Stires' motion for summary judgment?

Summary judgment is proper when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. We review a district court's grant or denial of a motion for summary judgment de novo, applying the same Rule 56(c), M.R.Civ.P., criteria used by that court. Johnson v. Nyhart (1995), 269 Mont. 379, 384, 889 P.2d 1170, 1173 (citation omitted).

The moving party has the initial burden of establishing the absence of genuine issues of material fact and entitlement to judgment as a matter of law. Brinkman & Lenon v. P & D Land Enters. (1994), 263 Mont. 238, 241, 867 P.2d 1112, 1115. Only where the moving party satisfies its initial burden does the burden shift to the party opposing summary judgment to present evidence raising a genuine issue of material fact. Matter of Estate of Lien (1995), 270 Mont. 295, 298, 892 P.2d 530, 532 (citing Owen v. Ostrum (1993), 259 Mont. 249, 255-56, 855 P.2d 1015, 1019). The nonmoving party may not rest upon the allegations in the pleadings or on speculative or conclusory statements. Estate of Lien, 892 P.2d at 532 (citing Simmons v. Jenkins (1988), 230 Mont. 429, 432,

5

750 P.2d 1067, 1069). Moreover, only admissible evidence can be considered in determining whether genuine issues of material fact exist. See Treutel v. Jacobs (1990), 240 Mont. 405, 408, 784 P.2d 915, 917.

"Material issues of fact are identified by looking to the substantive law governing the proceedings." Estate of Lien, 892 P.2d at 532 (citation omitted). Here, Carelli and Stires agree that the UCC is the primary source of law applicable in this case because the sale of elk at issue here is a sale of "goods" under § 30-2-105(1), MCA (1985), and, additionally, that the promissory note is an "instrument" as defined in §§ 30-3-102 and 30-3-104, MCA (1985). They also agree that contract and partnership principles apply only secondarily.

The central issue in this case is whether Stires is liable on the debt evidenced by the promissory note and security agreement for the purchase of the elk executed by Hall in Carelli's favor. Stated differently, the issue is whether Hall bound the Game Ranch partnership and, as a result, Stires, when he executed the note and security agreement. In support of his motion for summary judgment, Stires relies on the promissory note and the related security agreement, both executed solely by Hall and identifying only Hall as the debtor. Stires contends that they clearly and unambiguously establish, via their express terms, that Hall is the sole person liable for the debt evidenced by the promissory note.

The note specifically provides that "the undersigned promises to pay . . MARTIN CARELLI . the sum of Thirty-six Thousand

6

and no/100 ($36,000.00) Dollars on or before the 20th day of December, 1986. . . ." for the thirty-eight head of elk. Hall is the sole signatory of the note and neither the Game Ranch nor Stires is referenced in any way. Thus, the promissory note clearly establishes that Hall is the person liable for the promise to pay contained therein.

In addition, § 30-3-401(1), MCA (1985), expressly provides that "[n]o person is liable on an instrument unless his signature appears thereon." Because neither Stires nor the Game Ranch is identified in the note and Stires' signature is not contained therein, Stires is not liable on the instrument.

We conclude that, as the party moving for summary judgment, Stires met the initial burden of establishing the absence of genuine issues of material fact regarding Stires' liability on the promissory note executed by Hall and entitlement to judgment as a matter of law. The burden then shifted to Carelli to present affirmative evidence of a material and substantial nature raising genuine issues of material fact regarding Stires' liability; he could not rest on the allegations in his pleadings or on conclusory or speculative statements. See Estate of Lien, 892 P.2d at 532.

Carelli's argument that Stires is liable for the debt evidenced by the promissory note executed by Hall is based on the UCC and contract and partnership law. Conceding that the promissory note is clear and identifies Hall as the sole debtor, Carelli nonetheless argues that his deposition establishes the existence of a genuine issue of material fact regarding whether

7

Hall signed the promissory note on behalf of the Game Ranch and that the District Court properly determined that this factual issue precluded summary judgment.  Specifically, he relies on his deposition testimony that, in negotiating for the purchase of the elk, Hall represented to him that Hall was purchasing the elk on behalf of the Game Ranch and that the partnership and, more specifically, Stires, would pay the debt.

Carelli concedes that parol evidence is inadmissible to alter the express and unambiguous terms of a written agreement.  He also implicitly recognizes that Hall's alleged representations could be considered in the summary judgment context only if they would be admissible into evidence at trial.  See Treutel, 784 P.2d at 917. Carelli advances alternative arguments under which Hall's alleged representations that he signed the promissory note in a representative capacity--that is, on behalf of the Game Ranch-- constitute admissible evidence properly considered by the District Court  in denying Stires' motion for summary judgment.  His arguments  in this  regard are premised on his contention  that reference to the Game Ranch in the security agreement creates an ambiguity as to the identity of the debtor on the promissory note.

Extrinsic evidence of contemporaneous or prior oral agreements which contradicts the express  terms of a written agreement is admissible where the written agreement is ambiguous. See Haggerty v. Gallatin County (1986), 221 Mont. 109, 117, 717 P.2d 550, 555. Whether an ambiguity exists is a question of law.  See Klawitter v. Dettmann (1994), 268 Mont. 275, 281, 886 P.2d 416, 420; Weldon v.

8

Montana Bank (1994), 268 Mont. 88, 93, 885 P.2d 511, 514. Where the language of an agreement is clear and unambiguous and, as a result, susceptible to only one interpretation, the duty of the court is to apply the language as written. Audit Services, Inc. v. Systad (1992), 252 Mont. 62, 65, 826 P.2d 549, 551 (citation omitted). An ambiguity exists, however, when a contract is subject to two different interpretations; under such a circumstance, parol evidence can be used to determine the parties' intent. Audit Services, 826 P.2d at 551; see also Morning Star Enters. v. R.H. Grover (1991), 247 Mont. 105, 111, 805 P.2d 553, 557.

As discussed above, the promissory note identifies Hall as the sole debtor. It also states that "[t]his note is in conjunction with that certain Security Agreement bearing date of June 30, 1986, covering 38 head of elk." The security agreement, like the promissory note, designates Hall as the debtor and is signed only by Hall. It further provides that the elk will be used for business purposes and kept at the Game Ranch. The security agreement does not refer to Stires or indicate in any manner that Hall signed in a representative capacity on behalf of the Game Ranch.

The promissory note and security agreement are susceptible to only one interpretation with regard to the identity of the debtor liable on the note. The promissory note expressly states that Hall is the person responsible for paying the obligation owed for the sale of the elk. Moreover, the security agreement expressly designates Hall as the debtor. Thus, because Hall is "the person

9

who owes payment . . of the obligation secured," he is the "debtor" as that term is used in the Secured Transactions chapter of the UCC. See § 30-9-105(1)(d), MCA (1985). The reference to the Game Ranch in the security agreement does not render ambiguous the plain language of the note and the security agreement identifying Hall as the debtor.

Carelli also argues that § 30-3-403(1), MCA (1991), permits extrinsic evidence that Hall was acting on behalf of the Game Ranch in signing the promissory note. Recognizing that the 1985 version of § 30-3-403(1), MCA, was in effect at the time of the transaction at issue, Carelli argues that the 1991 amendment to § 30-3-403, MCA, was merely procedural and, as a result, properly can be applied retroactively. Stires contends, on the other hand, that the 1991 amendment was substantive and cannot be applied retroactively.

As a general rule, statutes cannot be applied retroactively unless expressly so declared by the Montana legislature. Section 1-2-109, MCA. A statute does not operate retroactively merely because it is applied to conduct occurring prior to its enactment. Porter v. Galarneau (1996), 275 Mont. 174, 183, 911 P.2d 1143, 1148 (citation omitted). A retroactive law is

> one which takes away or impairs vested rights acquired under existing laws or creates a new obligation, imposes a new duty, attaches a new disability in respect to transactions already passed, or gives a transaction a different legal effect from that which it had when it occurred.

Porter, 911 P.2d at 1150 (citations omitted).

10

In order to determine whether the 1991 amendments to § 30-3-403, MCA, were substantive, so as to constitute a retroactive law if applied to the promissory note at issue here, it is necessary to examine several related statutes from both the 1985 and 1991 versions of Montana's UCC. As noted above, § 30-3-401(1), MCA (1985), expressly provides that "[n]o person is liable on an instrument unless his signature appears thereon." A signature may be made by an agent or other representative, and the representative's authority to make that signature may be established "as in other cases of representation." Section 30-3-403(1), MCA (1985). Conversely, where an authorized representative signs his own name to an instrument, the representative--rather than the represented person--is personally obligated unless the instrument either names the person represented or shows that the representative signed in a representative capacity. Section 30-3-403(2)(a), MCA (1985).

Here, it is clear that neither Stires' nor the Game Ranch's signature appears on the promissory note executed by Hall in Carelli's favor. Thus, pursuant to § 30-3-401(1), MCA (1985), Stires is not liable on the note. Since Stires' signature does not appear, subsection (1) of § 30-3-403, MCA (1985), cannot be used to establish that Hall had authority to make the signature. Moreover, even if Hall were authorized to sign instruments on behalf of Stires or the Game Ranch, he would remain personally--and solely--liable on the promissory note to Carelli under § 30-3-403(2)(a), MCA (1985), because the note neither names the person represented

**11**

nor indicates that Hall signed in a representative capacity. Thus, under the 1985 versions of §§ 30-3-401 and 30-3-403, MCA, Stires is not liable on the promissory note as a matter of law.

The 1991 versions of these two statutes are significantly different. Under § 30-3-401, MCA (1991), a person can be liable on an instrument, even absent that person's signature, if the person "is represented by an agent or representative who signed the instrument and the signature is binding on the represented person under 30-3-403." Section 30-3-403(1), MCA (1991), provides that, "[i]f a person **acting, or purporting to act, as a representative signs an instrument by signing . . . the name of the signer,"** the represented person can be bound by--and liable under--the signature under certain circumstances, "whether or not identified in the instrument." (Emphasis added.)

Thus, under the 1991 version of the UCC, if Hall acted or "purported to act" on behalf of the Game Ranch partnership and Stires in executing the promissory note to Carelli, Stires potentially could be liable for the debt underlying the note. Carelli argues that Hall's alleged representations that he was acting on behalf of the Game Ranch and Stires in executing the note are admissible under § 30-3-403(1), MCA (1991), as evidence that Hall was so acting and purporting to act.

The 1991 amendment to § 30-3-403, MCA, provides for potential liability of represented persons which did not exist under the 1985 version of the statute. If applied here, § 30-3-403(1), MCA (1991), could impose a new obligation on Stires with regard to a

12

transaction already passed. Thus, the 1991 amendment is substantive and cannot be applied retroactively unless expressly declared retroactive by the legislature. See § 1-2-109, MCA; Porter, 911 P.2d at 1150. Section 30-3-403, MCA (1991), does not contain an express declaration that the legislature intended it to apply to transactions already passed. Accordingly, we conclude that § 30-3-403(1), MCA (1991), is not applicable in this case and, as a result, Hall's alleged representations to Carelli that he purchased the elk on behalf of the Game Ranch and that Stires would pay the debt are not admissible thereunder.

Notwithstanding his argument above that the 1991 version of § 30-3-403(1), M C applies in this case, Carelli relies on cases interpreting the 1983 and 1985 versions of § 30-3-403(2)(b), MCA, in support of his argument that parol evidence is admissible here to prove Hall signed the promissory note on behalf of the Game Ranch partnership. The 1983 and 1985 versions of § 30-3-403, MCA, are identical; accordingly, we refer only to § 30-3-403, MCA (1985), in discussing the cases on which Carelli relies.

Carelli argues that Clarks Fork Nat'l Bank v. Papp (1985), 215 Mont. 494, 698 P.2d 851, and Accounts Management Corp. v. Lyman Ranch (1987), 230 Mont. 35, 748 P.2d 919, are factually similar to the present case and support the admissibility of his deposition testimony regarding Hall's alleged representations as evidence. In both Clarks Fork Nat'l Bank and Accounts Management Corp., we concluded that parol evidence was admissible to determine whether the promissory notes at issue were signed in a representative or

13

individual capacity under § 30-3-403(2), MCA (1985), which provides in relevant part:

> An authorized representative who signs his own name to an instrument:
> . . . .
> (b) *except as otherwise established between the immediate parties,* is personally obligated if the instrument names *the person represented but does not show that the representative signed in a representative capacity.*

(Emphasis added). Under this statute, where an instrument names the represented party but the representative does not indicate that he or she signed in a representative capacity, parol evidence is admissible to determine the actual agreement between the immediate parties to the instrument regarding liability on the instrument. See Clarks Fork Nat'l Bank, 698 P.2d at 853; Accounts Management Corp. 748 P.2d at 922-23.

Clarks Fork Nat'l Bank involved a promissory note executed in favor of Clarks Fork National Bank (Clarks Fork) which identified the debtors as "'Papp, Ellak and Violet dba Papp Landscaping Co.'" The note was signed by Ellak and Violet Papp without any further reference to Papp Landscaping Co. Clarks Fork Nat'l Bank, 698 P.2d at 852. Clarks Fork sued Ellak and Violet Papp (the Papps) for the debt evidenced by the note, contending that the note was their personal obligation. The Papps asserted, however, that they had executed the note in their corporate capacities. The district court granted Clarks Fork's motion for summary judgment, holding the Papps personally liable for the debt evidenced by the promissory note. Clarks Fork Nat'l Bank, 698 P.2d at 852.

14

On appeal, Clarks Fork argued that the promissory note was unambiguous and, as a result, evidence could not be presented to vary the terms of the note. We agreed that parol evidence generally is inadmissible unless the note is ambiguous or uncertain. Clarks Fork Nat'l Bank, 698 P.2d at 853. We concluded, however, that § 30-3-403(2)(b), MCA (1985), specifically allowed proof beyond the provisions of the note because the language of the note itself--that is, the reference to both the Papps and Papp Landscaping as the borrowers--suggested that the Papps and Clarks Fork, as the immediate parties to the note, "may have 'otherwise established' as provided in [§ 30-3-403(2)(b), MCA (1985)]." Accordingly, we reversed the summary judgment against the Papps and remanded for the district court's consideration of parol evidence to determine what the Papps and Clarks Fork intended. Clarks Fork Nat'l Bank, 698 P.2d at 853-54.

In Accounts Management Corp., Lyman Ranch had borrowed a considerable amount of money from Farmers Union Oil (Farmers), but failed to repay it. Howard Lyman (Lyman) executed a promissory note for the benefit of Farmers to cover the delinquent debt. Accounts Management Corp., 748 P.2d at 920-21. The top part of the promissory note commemorated the debt owed by Lyman Ranch to Farmers and was signed by Lyman on behalf of Lyman Ranch. The bottom part of the note contained an unconditional promise to repay the debt, did not identify the debtor and was signed by Lyman in his individual capacity. Accounts Management Corp., 748 P.2d at 921.

15

Farmers sued Lyman in his individual capacity, as the signatory of the note, and Lyman Ranch. Lyman Ranch admitted liability for the debt, but Lyman denied personal liability. Prior to trial, Farmers assigned its rights against Lyman and Lyman Ranch to Accounts Management. The district court concluded that the bottom portion of the promissory note contained an unambiguous, unconditional promise by Lyman to repay the debt and, accordingly, entered judgment against Lyman individually. Accounts Management Corp., 748 P.2d at 922.

We determined on appeal that, as Farmers' assignee, Accounts Management stepped into Farmers' shoes and was considered an immediate party to the promissory note for purposes of the first requirement under § 30-3-403(2)(b), MCA (1985). See Accounts Management Corv., 748 P.2d at 922-23. Additionally, since the promissory note named Lyman Ranch as the debtor but failed to show that Lyman signed in a representative capacity, the second requirement of § 30-3-403(2)(b), MCA (1985), was satisfied. Accounts Management Corp., 748 P.2d at 923. We concluded, therefore, that "by statute, as between the immediate parties, the [promissory note] creates an ambiguity in regard to the second signature." Accounts Management Corp., 748 P.2d at 922.

Under those circumstances, and relying on Clarks Fork Nat'l Bank, we concluded that the issue of who was obligated on the note was a question of fact for the trier of fact. Accounts Management Corp., 748 P.2d at 923. For purposes of resolving that issue, we concluded that § 30-3-403(2)(b), MCA (1985), allows parol evidence

16

in litigation between the immediate parties to prove that the signature was, or was not, in a representative capacity. Accounts Management Corn., 748 P.2d at 923.

Thus, Clarks Fork Nat'l Bank and Accounts Management Corp. share the same dispositive facts with regard to the admissibility of parol evidence under § 30-3-403(2)(b), MCA (1985). First, the litigation in both cases was between the immediate parties to the promissory note. Second, in both cases the promissory note referenced the corporate entity in identifying the debtors, but contained a signature which did not indicate that the signatory signed in a representative capacity. Those facts fell squarely within the purview of § 30-3-403(2)(b), MCA (1985), and, therefore, we concluded that parol evidence was admissible to determine whether the notes were signed in an individual or representative capacity. See Clarks Fork Nat'l Bank, 698 P.2d at 853; Accounts Management Coru., 748 P.2d at 923.

The present case is factually distinguishable from both Clarks Fork Nat'l Bank and Accounts Management Corp.. Here, the litigation is not between the immediate parties to the promissory note. The promissory note was executed by Hall in Carelli's favor and they were the immediate parties to the note; Stires was not a party to the transaction. Moreover, the promissory note does not refer to the Game Ranch or Stires in any way. Unlike in Clarks Fork Nat'l Bank and Accounts Management Corp., the facts in the present case do not fall within the purview of § 30-3-403(2)(b), MCA (1985). Thus, Clarks Fork Nat'l Bank and Accounts Manaaement

17

Corp. do not support Carelli's argument that parol evidence is admissible here.

Finally, Carelli argues that Stires is liable for the debt evidenced by the promissory note executed by Hall in Carelli's favor because Stires accepted the benefit of the transaction between himself and Hall. In other words, Carelli argues that Stires ratified Hall's purchase of the elk on behalf of the Game Ranch, even if Hall did not have authority to bind the Game Ranch partnership, because Stires accepted the elk at issue and used them for business purposes. In this regard, he contends that the reference to the Game Ranch in the security agreement "created a strong, if not absolute, probability that the elk were kept on the partnership property and used for hunting purposes." He argues that his deposition testimony regarding his visits to the Game Ranch created a genuine issue of material fact as to whether the Game Ranch had possession of the elk.

Review of Carelli's deposition testimony reflects that Carelli did not offer any evidence establishing that Stires took possession of the elk. Carelli did not state with certainty that any of the elk purchased by Hall were located at the Game Ranch or received by Stires. In fact, Carelli testified that he had visited the Game Ranch, but that he did not get close enough to the elk to positively identify any of them as the elk he sold to Hall. Carelli's argument that Stires is liable on the note due to possession of the elk is entirely speculative and, therefore, is

18

insufficient to raise genuine issues of material fact precluding summary judgment.  See Estate of Lien, 892 P.2d at 532.

We conclude that Carelli failed to meet his burden on summary judgment of presenting admissible evidence raising a genuine issue of material fact regarding Stires' liability for the debt evidenced by the promissory note.  On that basis, we further conclude that Stires was entitled to judgment as a matter of law.  Accordingly, we hold that the District Court erred in denying Stires' motion for summary judgment.

Reversed and remanded for entry of summary judgment in favor of Stires

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

19

November 14, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Michael K. Rapkoch, Esq.
Randolph, Jacobs, Jr., Esq.
Felt, Martin, Frazier & Nelson
P.O. Box 2558
Billings, MT  59103-2558

Michael J. Lilly, Esq.
Rienne H. McElyea, Esq.
Berg, Lilly, Andriolo & Tollefsen
910 Technology Blvd., Ste. A
Bozeman, MT  59715

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy