No. 96-325

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

CLYDE SCHRECKENDGUST, JR.,

      Plaintiff and Appellant,

  v.

FLORENCE BAPTIST CHURCH, INC.,

      Defendant and Respondent.



APPEAL FROM: District Court of the Twenty-First Judicial District,
In and for the County of Ravalli,
The Honorable Jeffrey H. Langton, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          Dirk A. Williams; Church, Harris, Johnson &
          Williams, Missoula, Montana

      For Respondent:

          David Rodli; David Rodli Law Offices, Missoula,
          Montana


Submitted on Briefs: January 16, 1997

Decided: January 30, 1997

Filed:

_____
'Clerk'

Justice Karla M. Gray delivered the Opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

Clyde Schreckendgust, Jr. (Clyde) appeals from the judgment entered by the Twenty-First Judicial District Court, Ravalli County, on its order granting the motion for summary judgment filed by Florence Baptist Church, Inc. (Church). We reverse and remand.

The dispositive issue on appeal is whether the District Court erred in determining that the Church met its initial burden of establishing that no genuine issue of material fact existed with regard to its compliance with the use restriction in the 1977 warranty deed.

## FACTUAL BACKGROUND

In 1975, Ken Cox founded the Church known then as the Florence Bible Church, and held worship services in the basement of his home. In April of that year, Clyde conveyed a one-acre parcel of land (Parcel A) in the Florence Orchard Homes subdivision, Ravalli County, to the Church via a special warranty deed which limited the use of Parcel A to noncommercial church purposes. One year later, Clyde conveyed another one-acre parcel of land (Parcel B) in the same subdivision to the Church via a warranty deed devoid of

2

limitation. The Church opened a school, known as the Florence Christian Academy, and began holding academic classes in 1976. The Church subsequently built a sanctuary and school building on Parcels A and B. The ownership and use of Parcels A and B under the deeds to those parcels are not at issue in this case.

In 1977, the Church offered to purchase thirteen acres of land (the 13-acre parcel) adjacent to Parcels A and B from Clyde. At that time, the Church was conducting a five-day per week, Christian school with approximately 140 students from kindergarten through twelfth grade (K-12) on Parcels A and B. The Church wanted to build a larger church sanctuary and an athletic field on the 13-acre parcel and convert its existing church facility into an extension of the school building on Parcels A and B.

Clyde declined the Church's offer to purchase the land. Later, however, he conveyed the 13-acre parcel to the Church and the Florence Christian Academy via a warranty deed (1977 warranty deed) which described the real property as follows:

> Lots Thirty (30), Thirty-one (31) and Thirty-two (32), Florence Orchard Homes, a platted subdivision of Ravalli County, Montana, LESS Parcel A and Parcel B located in said Lot 30, Certificate of Survey No. 836 which were previously conveyed; **so long as said lands are used for school and Christian church purposes, that is Fundamental, Bible believing, meeting the adademic [sic] requirements of Christian Education; grades K-12 and beyond, [sic] If this discontinues the property conveyed shall revert back to original owner or assigners [sic].** [Emphasis added.]

As noted above, Parcels A and B had already been conveyed to the Church. The first portion of the quoted limitation in the 1977

3

warranty deed is referred to below as the use restriction; the second portion as the reversionary clause.

The Church held academic classes at its school located on Parcels A and B through the 1985-1986 school year. Enrollment was limited, however, in large part because many parents could not pay the tuition being charged. During the 1987-1988 and 1988-89 academic years, only kindergarten and first grade students were enrolled at the Church's school on Parcels A and B. During the 1989-1990 academic year, only kindergarten through third grade students were enrolled at the school.

After the 1989-1990 school year, the Church continued to offer a four-day per week, kindergarten class taught by a state-certified elementary teacher at its school on Parcels A and B. In 1991, Clyde met with Gary Randall (Randall), the Church's pastor at the time, to discuss the language of the 1977 warranty deed and the Church's intentions regarding its school. Randall stated in his affidavit that he "expressed the church's continuing intent to have a school in operation on the property." In August of 1991, the Church began the Florence Baptist Bible Institute, a post-secondary education program, which--with the exception of one semester in 1994--has been conducting classes since that time.

After his 1991 meeting with Randall, Clyde apparently did not contact the Church until July 5, 1994, when he advised Randall that he would begin "foreclosure" proceedings on the 13-acre parcel unless the Church was operating a traditional on-premises K-12 school by the end of August, 1994. The Church did not comply with

4

Clyde's demand by the deadline. It did, however, found the Florence Christian Academy Home School Association (FCAHSA), apparently in 1994, and applied for membership in the Accelerated Christian Education program in late July of 1994; its membership application was approved in January of 1995. The Church administers the FCAHSA, supervising families who belong to the FCAHSA and who "home school" their children. It also provides those families with access to the school building and numerous resources, materials, curricula, guidance and certification. At the conclusion of each academic quarter, an award ceremony is held at the school for FCAHSA students; graduates of the FCAHSA receive a diploma from the Florence Christian Academy. Since its inception, the Church has held traditional worship services, Sunday school classes, adult Bible studies and teen group activities.

## PROCEDURAL HISTORY

Clyde filed an action against the Church on November 1, 1994, seeking to quiet title to the 13-acre parcel in his name on the basis that the Church failed to comply with the use restriction contained in the 1977 warranty deed. He also sought to have the Church ejected from the 13-acre parcel based on its refusal to comply with his demand to vacate.

The Church responded that, although it did not "currently regularly conduct on-premises private elementary and secondary school classes during weekdays," it was in compliance with the use restriction contained in the 1977 warranty deed. In addition, while the Church admitted that it had refused Clyde's demand to

5

vacate the 13-acre parcel, it alleged that its refusal was proper. Finally, the Church pled the affirmative defenses of accord and satisfaction, estoppel, and the statute of limitations.

The Church subsequently moved for summary judgment on the basis that no genuine issues of material fact existed regarding its compliance with the clear and unambiguous restriction requiring use for "school and Christian church purposes" which was contained in the 1977 warranty deed. The Church also contended that the First Amendment to the United States Constitution prohibited the District Court from interpreting church doctrine and religious terminology in order to resolve any ambiguity regarding additional terms in the use restriction. In addition, the Church argued that the 1977 warranty deed was orally modified in 1991 when Clyde gave the Church five years in which to be operating an on-premises K-12 school. Finally, the Church maintained that Clyde's attempt to quiet title to the 13-acre parcel via exercise of the reversionary clause was barred by laches.

Clyde filed a cross-motion for summary judgment, contending that his quiet title action was purely a contract action without First Amendment implications. He asserted entitlement to judgment as a matter of law on the basis that the plain language of the use restriction contained in the 1977 warranty deed required the Church to maintain an on-premises K-12 academic school and that no genuine issue of material fact existed regarding the Church's failure to comply. Alternatively, he maintained that the parties' intent, custom and usage for at least fourteen years was that the Church

6

must "operate" an on-premises K-12 academic school in order to comply with the use restriction.

The District Court granted the Church's motion for summary judgment and denied Clyde's cross-motion. Among other things, it determined that the Church had established the absence of any genuine issues of material fact regarding its compliance with the use restriction contained in the 1977 warranty deed and that Clyde failed to raise a genuine issue of material fact in that regard. The District Court subsequently entered judgment in favor of the Church.

Thereafter, Clyde filed a motion to alter or amend judgment which was deemed denied by operation of law. Clyde appealed.

**DISCUSSION**

Did the District Court err in determining that the Church met its initial burden of establishing that no genuine issue of material fact existed with regard to its compliance with the use restriction in the 1977 warranty deed?

Summary judgment is proper when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. We review a district court's grant or denial of a motion for summary judgment de novo, applying the same Rule 56(c), M.R.Civ.P., criteria used by that court. Carelli v. Hall (Mont. 1996), 926 P.2d 756, 759, 53 St.Rep. 1116, 1117 (citation omitted). The moving party has the initial burden of establishing the absence of genuine issues of material fact and entitlement to judgment as a matter of law. Carelli, 926 P.2d at 759 (citation omitted). Only where the moving party satisfies its

7

initial burden does the burden shift to the party opposing summary judgment to present evidence raising a genuine issue of material fact. Carelli, 926 P.2d at 759-60 (citation omitted).

The arguments made by Clyde and the Church to both the District Court and this Court refer interchangeably, and often in the aggregate, to Parcels A and B and the 13-acre parcel, often simply referring to activities on "the property." They also apparently assume that the Church's activities on Parcels A and B constitute activities on the 13-acre parcel to which the use restriction and reversionary clause at issue apply and that, if such activities meet the use restriction, those activities would defeat both Clyde's exercise of the reversionary right and his attempt to quiet title to the 13-acre parcel. It is not clear why the parties proceeded in this manner. In any event, however, the District Court joined in this confusion by failing to carefully describe whether certain activities are taking place on Parcels A and B or on the 13-acre parcel; indeed, it appears that the court followed the parties' lead in grouping all the property together and assuming that any church activities anywhere on "the property" related to the 13-acre parcel, the use restriction and the reversionary clause.

The problem is that the record before us does not establish any activity at all by the Church on the 13-acre parcel. Clyde argues in his opening brief on appeal that, regardless of the correct interpretation of the use restriction relating to school purposes, the record does not support any church use of the 13-acre

8

parcel for any--even tangential--school purpose. The Church responds that Ken Cox's July 21, 1995, affidavit establishes that the 13-acre parcel "is used--as it has been since 1977 when the land was donated by Clyde--as an athletic field."

Ken Cox's affidavit states:

5)    Upon the initial two acres [Parcels A and B] was situated the church and school. It was the desire of the church board to purchase from Mr. Schreckendgust the adjacent 13 acres in order to build a larger church sanctuary and an athletic field, converting the existing church building on the initial two acres into an extension of the already established school. The church board desired nothing more than to expand the ministry already started.
6)    Approximately in May, 1977, the church elders of Florence Bible Church, including Affiant, invited Mr. Schreckendgust to the church to show him a three-dimensional model of the proposed expansion project which would include a large church sanctuary and an athletic field for the 13 adjacent acres owned by Mr. Schreckendgust. No other buildings or representations were made on the three-dimensional model. No school buildings were shown on the model or proposed verbally or otherwise for the 13 acres.

While the affidavit reflects the Church's desires and intent regarding use of the 13-acre parcel, it clearly does not establish either the existence or the use of an athletic field on the 13-acre parcel after Clyde deeded it to the Church.

Nor does any other affidavit or exhibit establish that the Church ever made use of the 13-acre parcel. The affidavit of Mark Davis, the Church's senior pastor from October of 1987 through September of 1989, talks about a gentleman using "the bus barn and parsonage" for his own personal use. However, the affidavit does not state on which parcel the bus barn and parsonage were located. The Church's brief supporting its summary judgment motion in the

9

District Court discusses improvements, such as a septic system and drain field, and renovations on "the property." Again, the brief does not establish that the referenced improvements and renovations were on the 13-acre parcel. In January of 1987, the Church's attorney wrote a letter to Clyde, exploring the possibility of purchasing the "unconditional conveyance of the lands in Lots 30, 31 and 32 which have previously been the subject of the conditional conveyance." He refers, in that letter, to substantial improvements placed on the land, but does not elaborate.

The Church contends that Clyde conceded, for summary judgment purposes, that the Church and the full-time, on-premises K-12 school the Church earlier had been conducting were Christian, "Fundamental and Bible believing" and that the school met the academic requirements of Christian education. It also contends that he conceded that the kindergarten and the home school education classes offered by the Church are Christian, Fundamental, Bible believing and meet the academic requirements of kindergarten and home school education, respectively. While that may be true, those concessions do not establish that the kindergarten classes, the home school administration or the home school awards ceremonies were conducted on the 13-acre parcel. Indeed, the record strongly suggests that all of those activities take place in the Church buildings located on Parcels A and B.

Before the Church can establish the absence of genuine issues of material fact regarding its compliance with the use restriction in the 1977 warranty deed, it must establish--at a minimum--that it

10

makes use of the 13-acre parcel for church and school purposes. It has not done so. We hold that the District Court erred in determining otherwise and, for that reason, also erred in granting summary judgment to the Church. The court having erred on this threshold question, we do not address the legal analysis it applied, or the conclusion it reached, with regard to whether the use restriction in the 1977 warranty deed is ambiguous; those portions of the District Court's opinion and order on summary judgment are vacated pending further consideration, as may be appropriate, on remand.

Reversed and remanded for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____

_____

_____
Justices

11

January 30, 1997

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Dirk A. Williams, Esq.
Church, Harris, Johnson & Williams, P.C.
P.O. Box 4006
Missoula, MT 59806-4006

David Rodli, Esq.
David Rodli Law Offices
P.O. Box 2190
Missoula, MT 59806-2190

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: *S. Gallagher*
Deputy