No. 94-054

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994


BRIAN WRAY,

      Petitioner and Appellant,

  v.

STATE COMPENSATION INSURANCE FUND,

      Respondent and Insurer for

HARP LINE CONSTRUCTION COMPANY,

      Employer and Respondent.

FILED

AUG 16 1994

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   Montana's Workers' Compensation Court,
             The Honorable Mike **McCarter,** Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

         Darrell S. Worm; Ogle **&** Worm, Kalispell,
         Montana

      For Respondent:

         Thomas Bostock; Warden, Christiansen, Johnson
         **&** Berg, Kalispell, Montana


Submitted on Briefs:  June 9, 1994

Decided:  August 16, 1994

Filed:

_____
Clerk

Justice **Karla** M. Gray delivered the Opinion of the Court.

Brian Wray appeals from the Findings of Fact, Conclusions of Law, and Judgment entered by the Workers' Compensation Court which determined that no agreement existed between himself and the State Compensation Mutual Insurance Fund regarding recoupment of lump sum advances and, as a result, that recoupment from his current workers' compensation disability benefits is appropriate. We conclude that the parties agreed to recoupment only from **Wray's** future permanent partial disability benefits and, therefore, reverse the Workers' Compensation Court.

On December 5, 1985, Brian Wray (Wray) injured his cervical spine during the course of his employment with Harp Line Construction Company in Kalispell, Montana. The State Compensation Mutual Insurance Fund (State Fund) determined that the injury was compensable and paid weekly temporary total disability benefits of $266.66 from the date of injury.

Wray petitioned for partial lump sum advances in November of 1987, June of 1988, and March of 1989. The State Fund joined in the petitions as submitted by Wray, the Division of Workers' Compensation of the Montana Department of Labor and Industry (the Division) approved them for payment, and the State Fund paid the requested lump sum advances totalling **$14,671.43. Wray's** ultimate disability status was unknown at the time these advances were made.

In February of 1990, Wray was awarded social security disability benefits retroactive to March of 1987 based on his back

injury.  The State Fund subsequently was notified of **Wray's** social security award and in July, 1990, it reduced Wray's temporary total disability benefits to $193.01 to offset the social security benefits he was receiving.  Notification of the social security award apparently was the State Fund's first indication that Wray might be permanently totally disabled.  The State Fund continued Wray's temporary total disability benefits.

Wray again petitioned for a lump sum advance in January, 1992. The order approving the advance provided for recoupment to begin immediately from Wray's current disability benefits.  Wray returned the advance because of the immediate recoupment provision.

In June of 1992, the State Fund further reduced Wray's temporary total disability benefits to $153.06.  The reduction was instituted to recoup both the lump sum advances and an overpayment of workers' compensation benefits which resulted from the retroactive social security award.

Wray petitioned the Workers' Compensation Court for reinstatement of his full temporary total disability benefits in December, 1992.  The State Fund generally denied his entitlement to the full amount.  With regard to the State Fund's reduction to recoup the lump sum advances, Wray contended that the language of his petitions for the advances, the State Fund's concurrence in the petitions as submitted, and the Division's approval of those petitions, allowed recoupment only from future permanent partial disability benefits.

After the hearing held on May 24, 1993, the hearings examiner

3

entered Findings of Fact, Conclusions of Law, and Proposed Judgment which were adopted by the Workers' Compensation Court. The court subsequently denied Wray's motion to amend the judgment as it pertained to the recoupment of the lump sum advances from his current benefits and for a rehearing. Wray appeals.

The Workers' Compensation Court found that there was no written agreement between the parties concerning recoupment of the lump sum advances. In its order declining to amend the judgment as it pertained to recoupment of the advances, the court in essence concluded that the petitions for advances were ambiguous and that the testimony of Wray and Bill Visser (Visser), claims manager for the State Fund, demonstrated that the parties failed to have a meeting of the minds regarding recoupment.

The Workers' Compensation Court also found that the State Fund had begun recoupment from Wray's current benefits based on his age and medical history. The court concluded that "it is only fair" to allow the State Fund to recoup the lump sum advances from Wray's current temporary total disability benefits.

The parties agree that a workers' compensation insurer generally is entitled to recoup lump sum advances. See, e.g., Hedegaard v. Knife River Coal Mining Co. (1989), 238 Mont. 290, 293, 776 P.2d 1225, 1227. The threshold issue before us is whether Wray and the State Fund entered into an agreement as to the type of disability benefits from which Wray's advances could be recouped. Wray argues that the approved petitions for the advances constitute unambiguous, enforceable agreements allowing recoupment only from

4

his future permanent partial disability benefits.  The State Fund contends that the approved petitions are ambiguous and relies on extrinsic evidence purportedly establishing the absence of a meeting of the minds.

Although the Workers' Compensation Court's determination that no agreement concerning recoupment existed is denominated a "finding," the construction and interpretation of written agreements is, as a general rule, a question of law.  First Sec. Bank v. Vander Pas (1991), 250 Mont. 148, 152-53, 818 P.2d 384, 387.  Thus, we treat the "finding" as if it were denominated a conclusion of law.  We review a legal conclusion of the Workers' Compensation Court to determine whether it is correct.  Lund v. State Fund (Mont. 1994), 868 P.2d 611, 612, 51 St.Rep. 83, 84.

Wray's petitions, including the State Fund's written concurrence in them as submitted, constitute the "agreements" or contracts in the case before us.  The principles governing interpretation of contracts are well-established:

> When the language of a contract is clear and unambiguous, the contract does not require the application of the rules of construction and it is the court's duty too [sic] enforce the contract as made by the parties. . . . Where the words are clear, certain, and unambiguous, the language alone controls and there is nothing for the courts to interpret or construe.  The language employed must be given its ordinary meaning. . . . We may resort to the usual rules of construction to ascertain what the parties intended by the language they employed only when an ambiguity exists.  An ambiguity exists when the contract taken as a whole in its wording or phraseology is reasonably subject to two different interpretations. . . . In interpreting a written contract, the intention of the parties must be ascertained, first and foremost from the writing alone, taken as a whole if possible, and resort to extrinsic evidence in aid of discovering the parties' intent may be

5

had only when the contract appears on its face to be ambiguous or uncertain in this regard.

Morning Star Enterprises v. R.H. Grover (1991), 247 Mont. 105, 111, 805 P.2d 553, 557 (citations omitted; emphasis in original). Applying these principles to the agreements before us, we conclude that the agreements are not reasonably subject to two different interpretations.

In each of his petitions, Wray requested a partial lump sum advance in a specified dollar amount representing a certain number of weeks of compensation benefits at the benefit rate of $146.50 per week. The stated benefit rate did not reflect the temporary total disability rate Wray was receiving at the time of each petition. Rather, it corresponded to the permanent partial disability rate to which both Wray and the State Fund believed he would be entitled in the future. The only reasonable interpretation of the requirement on the Division's official form that a claimant include the number of weeks at a stated benefit rate is to provide with specificity the benefits against which the advance is sought and from which recoupment can be made.

Each petition also contained the following language: "I understand that such a lump sum advance payment will be deducted from any award or settlement I may receive in the future." Again, the petitions are clear and unambiguous that Wray requested advances of future permanent partial disability benefits rather than the temporary total benefits he was currently receiving.

An authorized representative of the State Fund concurred and joined in each petition as submitted by Wray; no changes were

6

suggested or made.  The Division ultimately approved each of Wray's petitions for a lump sum advance, as submitted, and the State Fund paid the advances accordingly.

The State Fund argues that the agreements are ambiguous because the phrase **"any** award or settlement . . . in the future" may be interpreted to include the benefits that Wray is _currently_ receiving; it cites no authority for this position.  The State Fund also contends that use of the alternative **"award or** settlement" language renders the agreement ambiguous as to the recoupment of the lump sum advances.  These arguments ignore both the "ordinary meaning" principle (Morning Star, 805 **P.2d** at 557) and common sense.  The operative word is **"future,"** and that word cannot reasonably be interpreted to mean "current."  We conclude that the only reasonable interpretation of the parties' agreements is that the advances were made against, and can only be recouped from, Wray's future partial disability benefits.  We hold, therefore, that the Workers' Compensation Court erred in concluding that no agreement regarding recoupment existed and, on that **basis**, in determining that the State Fund could recoup the lump sum advances from **Wray's** current temporary total disability benefits.

Relying on a discussion by the Workers' Compensation Court in its Order Amending Judgment, the State Fund contends that there was no meeting of the minds between the parties on recoupment.  This argument is based on testimony by Wray and Visser regarding their **"understandings"** at the **time** of the agreements as to when Wray likely would be classified as permanently partially disabled and,

therefore, when recoupment from permanent partial disability benefits would begin. The argument and the Workers' Compensation Court's discussion are fatally flawed, however, since both are premised on the court's erroneous conclusion that no clear and unambiguous agreement regarding recoupment existed. Resort to extrinsic evidence for the purpose of discovering the parties' intent is appropriate only when the contract appears on its face to be ambiguous or uncertain. Given our conclusion that the agreements at issue here were clear and unambiguous, the "no meeting of the minds" argument is not available to the State Fund.

The State Fund also contends that the parties committed a mutual mistake because they entered into the agreements believing that Wray was then permanently partially disabled. On that basis, the State Fund seeks modification of the agreements to allow immediate recoupment of the advances. It asserts that such relief is equitable, repeating the Workers' Compensation Court's concern regarding Wray's purported health and the dollar amount of the advances. We disagree that the parties committed a mutual mistake.

A mutual mistake occurs when the contracting parties share a common misconception about a vital fact upon which they based their bargain. Mitchell v. Boyer (1989), 237 Mont. 434, 437, 774 P.2d 384, 386. Parties cannot avoid a contract because of mutual mistake, however, if they bear the risk of a mistake. Restatement (Second) of Contracts § 152 (1979). Parties bear the risk of a mistake when they know they have limited knowledge regarding the facts to which the mistake relates at the time the contract is made

8

and treat their limited knowledge as sufficient. Restatement (Second) of Contracts § 154(b) (1979).

The State Fund bore the risk of mistake in the case before us. When approving the lump sum advances, the State Fund knew that it had limited knowledge of **Wray's** permanent disability status. At that time, Wray was classified as temporarily totally disabled. That classification does not support the State Fund's argument that Wray actually was permanently partially disabled. Moreover, it clearly indicates that his ultimate disability status had not yet been established. Visser conceded the State Fund's limited knowledge of Wray's disability status by testifying that the lump sum advances were approved based on the assumption that he was only partially disabled.

Notwithstanding its limited knowledge regarding **Wray's** disability status, the State Fund approved his petitions which, as discussed above, unambiguously requested lump sum advances to be recouped from **Wray's** future permanent partial disability payments. It could have included, as a hedge against an uncertain future, a provision for an alternative method of recoupment in the event **Wray's** ultimate disability status was other than permanent partial; it failed to do so. Bearing the risk of mistake, the State Fund is not justified in seeking to modify the agreements to obtain a result that it now finds more equitable than the terms of the agreements into which it entered.

We hold that the Workers' Compensation Court erred in determining that the State Fund could recoup the lump sum advances

from Wray's temporary total disability benefits.

Reversed and remanded for entry of a judgment consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

10

August 16, 1994

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Darrell S. Worm
OGLE & WORM
P. 0. Box 899
Kalispell, MT 59903-0899

Thomas Bostock
WARDEN, CHRISTIANSEN, JOHNSON & BERG
P. 0. Box 3038
Kalispell, MT 59903-3038


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

By: *N. Gallagher*
Deputy