No. 99-269

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 367

303 Mont. 410

16 P. 3d 1035

GLEN HABETS,

Plaintiff, Counterdefendant, and Respondent,

v.

JOHN K. SWANSON, and JEANNE T. SWANSON, and

JOETTE L. SWANSON,

Defendants, Counterclaimants, and Appellants,

JOHN K. SWANSON AND JEANNE T. SWANSON,

Third-Party Plaintiffs and Appellants,

v.

FARMERS UNION CENTRAL EXCHANGE, INC., N/K/A CENEX,

Third-Party Defendant and Respondent.

APPEAL FROM: District Court of the Ninth Judicial District,

In and for the County of Toole,

The Honorable Marc G. Buyske, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Robert J. Emmons, Emmons & Sullivan, Great Falls, Montana

For Respondents:

Thane P. Johnson, Werner, Epstein & Johnson, Cut Bank, Montana

(Glen Habets)

John D. Stephenson and Jon L. Kudrna, Jardine, Stephenson, Blewett &

Weaver, P.C., Great Falls, Montana (Farmers Union Central Exchange, Inc.)

Submitted on Briefs: June 15, 2000

Decided: December 28, 2000

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶1 John K. and Jeanne T. Swanson (hereinafter "Swansons") appeal from the Order Determining Pre-Trial Questions of Law issued by the Ninth Judicial District, Toole County. Swansons contend that the District Court erred when it excluded extrinsic evidence of their 1984 contract with Farmers Union Central Exchange, Inc. (hereinafter "Cenex"). We affirm.

## BACKGROUND

¶2 On February 1, 1990, Cenex sold Glen Habets approximately seven miles of subsurface 6-inch diameter pipeline, stretching from Kevin to Sunburst, Montana, that was no longer in use by Cenex. The contract provided that Cenex grants all "right, title and interest in and to seven (7) miles of 6 inch diameter inactive pipeline running from Sunburst,

Montana to Kevin, Montana in Toole County, as shown in red on the map which is attached . . . together with all leases, rights-of-way, easements, and permits or grants for the pipeline which may be owned by Cenex, if any." In August 1996, Habets began to excavate and remove the subsurface pipeline that he had purchased from Cenex.

¶3 In October 1996, during his removal operations, Habets reached the boundary of real property owned by the Swansons. The Swansons refused to allow Habets to enter the land and remove any section of pipeline. Habets attempted to enter the Swansons' property on an additional occasion but was denied access. It is undisputed that the sale documents covering the transfer of the seven-mile section of 6-inch pipeline from Cenex to Habets included the necessary easements, leases, right-of-ways, grants, or permits for salvage of the pipeline.

¶4 On June 30, 1997, Habets filed an application for preliminary injunction, naming John K. and Jeanne T. Swanson as Defendants, seeking to enjoin the Swansons from refusing to permit him access so that he could excavate and remove the pipe. On October 3, 1997, Habets filed an amended application and complaint, naming Joette L. Swanson as an additional Defendant as owner of a section of the land containing the pipeline, seeking damages for wrongful conversion, and raising other claims.

¶5 On January 21, 1998, the Swansons served their Answer and Counterclaim, alleging that they had purchased the same pipeline, as well as a section of real property on which part of the pipeline was buried, from Cenex on July 1, 1984. The counterclaim sought dismissal of Habets' lawsuit, recovery of the reasonable value of the pipe already removed and sold by Habets, trespass damages, and other claims. The Swansons' counterclaim is based on the following facts. On July 1, 1984, the Swansons entered into a contract with Cenex to purchase approximately 35 miles of various diameter inactive pipelines situated in Toole County. The 1984 contract provides that the Swansons/Cenex "[a]greement embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof." The pipelines to be conveyed were identified in the contract by attaching and specifically referencing maps that marked in red the pipeline that was included in the transfer. Although the 6-inch pipeline in question running from Sunburst to Kevin, Montana, is not marked in red on the maps referenced in the contract, the Swansons contend that parol evidence will establish that the parties intended that the pipeline in question was to be included in the sale and that, therefore, they are the legal owners of the pipeline.

¶6 On February 4, 1998, the Swansons filed a third-party complaint against Cenex, alleging breach of the contract for selling Habets the same line of pipe that Swansons claim they purchased on July 1, 1984. On March 26, 1999, the District Court entered an Order Determining Pretrial Questions of Law, holding that the Swansons' third-party complaint against Cenex was barred pursuant to the applicable statute of limitations, § 27-2-202(1), MCA, because the complaint was filed more than eight years after the parties had entered into the written contract for the sale of the pipeline. The District Court also ruled that the July 1, 1984 contract between the Swansons and Cenex, is clear and unambiguous, and thus parol evidence was not admissible to prove that the Swansons had purchased the pipeline between Kevin and Sunburst from Cenex prior to Cenex selling the same section of pipeline to Habets.

¶7 On April 5, 1999, the District Court entered a final judgment, dismissing with prejudice the Swansons' third-party claim against Cenex. The District Court also held that the contract between the Swansons and Cenex did not convey the disputed seven-mile segment of 6-inch pipeline to the Swansons. From this order the Swansons appeal.

## STANDARD OF REVIEW

¶8 Whether extrinsic evidence is admissible is a question of law. *See Carelli v. Hall* (1996), 279 Mont. 202, 209, 926 P.2d 756, 761. We review a district court's conclusion of law as to whether the court's interpretation of the law is correct. *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

## DISCUSSION

¶9 Whether the District Court erred when it barred the Swansons from relying on parol evidence to contest the terms of their 1984 written contract with Cenex?

¶10 The Swansons do not contest that the District Court properly dismissed Cenex by virtue of the applicable statute of limitations, nor do they challenge the District Court's ruling that the parol evidence rule precludes extrinsic evidence concerning the pipeline sale as between Cenex and the Swansons. However, the Swansons claim that extrinsic evidence as to the pipeline sale should be admitted in the pending litigation between Habets and the Swansons because Habets is a "stranger" to the 1984 contract between Cenex and the Swansons.

¶11 As a preliminary matter we note that all parties to this appeal question the status and propriety of their opponents' arguments from a procedural perspective. Cenex claims there is no final appealable order between Habets and the Swansons and, therefore, this appeal should be dismissed as premature. Habets argues that the Swansons never raised their "stranger to the contract" argument in the District Court and should be barred from raising it here. The Swansons contend that Habets should be barred from raising a "successor in interest" claim because it was not raised below. We find none of these arguments persuasive. The District Court ruled as a matter of law in its order entering final judgment that "the contract entered into between the Swansons and Cenex on July 1, 1984, did not convey the disputed seven mile segment of six-inch pipeline to the Swansons. There remains for trial the claim of Glen Habets against the Swansons . . . ." By concluding that the 1984 contract did not convey the disputed pipeline to the Swansons and that only Habets' claims remained for trial, the court's final order essentially dismissed Swansons' counterclaims for trespass and conversion. We will review these legal conclusions to determine whether they are correct.

¶12 The District Court concluded that the 1984 contract between the Swansons and Cenex did not include the sale of the disputed section of 6-inch pipeline. The court observed that the contract clearly states that Cenex sold to the Swansons "all of [Cenex's] right, title and interest in and to a portion of the Kevin-Sunburst Gathering System, . . . more particularly described as follows:

> (A) Approximately 35 miles of various diameter inactive pipelines situated in Toole County, Montana, *as shown in red on Exhibits "A" (maps), attached hereto and made a part hereof."*

(Emphasis added.) The court noted that Habets and the Swansons agreed that the 6-inch pipeline in dispute was not marked in red on Exhibit A referenced above and attached to the contract. The court concluded that the written contract between the Swansons and Cenex clearly and unambiguously did not include the 6-inch pipeline in dispute. Thus, the court prevented the Swansons from attempting to prove through extrinsic evidence that their contract with Cenex included the disputed pipeline.

¶13 It is well-settled by this Court that, "[w]here the language of an agreement is clear and unambiguous and, as a result, susceptible to only one interpretation, the duty of the court is to apply the language as written." *Carelli*, 279 Mont. at 209, 926 P.2d at 761. Only where an ambiguity exists may the court turn to extrinsic evidence of contemporaneous or

prior agreements to determine the intent of the parties. *Carelli*, 279 Mont. at 209, 926 P.2d at 761. We have recognized that "[a]n ambiguity exists when the contract taken as a whole in its wording or phraseology is reasonably subject to two different interpretations." *Wray v. State Comp. Ins. Fund* (1994), 266 Mont. 219, 223, 879 P.2d 725, 727. If the terms of the contract are clear, however, "there is nothing for the courts to interpret or construe" and the court must determine the intent of the parties from the wording of the contract alone. *Wray*, 266 Mont. at 223, 879 P.2d at 727.

¶14 The District Court's refusal to admit parol evidence regarding the terms of the 1984 contract between the Swansons and Cenex is correct. The District Court determined that the written contract between the Swansons and Cenex clearly and unambiguously did not include the disputed section of pipeline. The 1984 contract clearly states that Cenex is conveying its right, title, and interest in those various diameter inactive pipelines from the Kevin-Sunburst Gathering System "as shown in red on Exhibits 'A' (maps), attached hereto and made a part hereof." The Swansons agree that the disputed pipeline is not shown in red on "Exhibits 'A'" attached to the 1984 contract. The 1984 contract also provides that the Swansons/Cenex "[a]greement embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof." The terms of the 1984 contract are susceptible of but one meaning: Cenex did not convey to the Swansons its interest in the disputed pipeline. Accordingly, the Swansons cannot submit extrinsic evidence of prior or contemporaneous oral agreements, or prior written agreements to vary the terms of the 1984 contract.

¶15 The Swansons contend that the District Court should have allowed them to submit parol evidence regarding the terms of their 1984 contract with Cenex pursuant to the "stranger exception" to the parol evidence rule as discussed in *Fillinger v. Northwestern Agency, Inc. of Great Falls* (1997), 283 Mont. 71, 938 P.2d 1347. The Swansons maintain that because Habets is not a party to the 1984 contract, but rather a third party or stranger to that contract, the dispute is not "between the parties and their representatives or successors in interest," pursuant to § 28-2-905(1), MCA. Therefore, the Swansons insist, they are entitled to submit parol evidence to interpret their 1984 contract with Cenex.

¶16 Habets contends that the "stranger exception" is not applicable on the facts of the instant case and, therefore, the parol evidence rule still precludes the Swansons from submitting extrinsic evidence to interpret and modify the clear and unambiguous terms of their 1984 contract with Cenex. Habets insists that his right to the disputed pipeline

depends on the fact the 1984 contract between Cenex and the Swansons did not transfer the disputed pipeline. Therefore, Habets contends, the stranger exception does not apply because the rights and duties created by the 1984 contract are directly at issue. We agree.

¶17 A discussion of the "stranger exception" to the parol evidence rule must begin with a consideration of § 28-2-905(1), MCA. Section 28-2-905(1), MCA, provides, in relevant part that "there can be between the parties and their representatives or successors in interest no evidence of the terms of the agreement other than the contents of the writing." Section 28-2-905(1), MCA, by its very terms is silent with regard to whether in disputes between parties and strangers to a written contract, extrinsic evidence may be admitted. In construing a statute, we will not assume that the legislature intended to insert what it has in fact omitted. Section 1-2-101, MCA.

¶18 We have discussed the "stranger exception" to the parol evidence rule in three disputes between parties and strangers to a written contract. We first discussed the stranger exception in *Read v. Lewis & Clark County* (1919), 55 Mont. 412, 178 P. 177. *Read* involved a tax assessment dispute between a party to a real estate transaction and a county tax assessor. The party to the real estate contract submitted extrinsic evidence to prove that the real estate contract was a contract for an option to buy and not a contract for sale and therefore not taxable. The county assessor claimed that the extrinsic evidence was inadmissible under the parol evidence rule. We stated that "[i]n a controversy between a party to the contract and a stranger, however, the [parol evidence] rule does not apply. As against him, a party may assert that the agreement was other or different in any respect from that which the writing expresses." *Read*, 55 Mont. at 419, 178 P. at 180. However, with regard to the contract at issue, we observed that "it is a debatable question whether the writing on its face imports a sale, or merely a contract for a sale." *Read*, 55 Mont. at 417, 178 P. at 179. We also noted that the extrinsic evidence was submitted as part of a stipulation of facts voluntarily agreed to by the defendant. *Read*, 55 Mont. at 419, 178 P. at 180. Accordingly, the use of extrinsic evidence to interpret the written contract in *Read* does not represent an application of the stranger exception, but rather represents the use of extrinsic evidence when the import of a contract is ambiguous.

¶19 The next discussion of the stranger exception came in *Greening v. Gazette Printing Co.* (1939), 108 Mont. 158, 88 P.2d 862. In *Greening*, a dispute concerning a negligence action between a pedestrian and a paper carrier, the plaintiff sought the introduction of an oral agreement between the carrier and the Billings Gazette to establish the existence of a master-servant relationship and thus hold the Gazette vicariously liable for the carrier's

negligence. We stated that "[a]s between the parties, the written contract is controlling as to the relationship, and ordinarily neither party may vary it by parol testimony; but as to third parties, this is not the case." *Greening*, 108 Mont. at 165, 88 P.2d at 864. However, we did not affirm the admission of the oral agreement under the stranger exception to the parol evidence rule to vary or contradict the written employment contract. Rather, we observed that the extrinsic evidence was admissible to "show that even though the written contract did not provide for the control necessary to constitute the master-servant relationship, actually such control was exercised to create the relationship." *Greening*, 108 Mont. at 165, 88 P.2d at 864.

¶20 Lastly, in *Fillinger,* a dispute involving a claim of professional negligence between an insured and his insurance agent, we affirmed the admission of evidence of oral negotiations between the insured and his agent regarding the agent's agreement to procure specified coverage. The insured, Fillinger, contended that he specifically requested insurance coverage for any horse-related accident involving his outfitting operations and that the defendant agent assured him that the forthcoming policy would contain the requested coverage. The agent claimed that Fillinger had merely requested a "regular outfitter's policy." The policy that was ultimately issued failed to contain the special coverage Fillinger claimed he had requested and which he claimed the agent had assured him would be provided. We held that Fillinger could present evidence of discussions with his insurance agent to establish the agent's assurances regarding the written insurance contract between Fillinger and his insurance company. In so holding, we stated that Fillinger could use "parol evidence" against a "stranger to the contract, to assert that the agreement was other or different in any respect from that which the writing expressed." *Fillinger,* 283 Mont. at 82, 938 P.2d at 1347.

¶21 We take this opportunity to clarify our holding in *Fillinger*. *Fillinger* does not illustrate an application of the stranger exception to the parol evidence rule, but rather represents a factual situation in which the parol evidence rule is simply not implicated. Upon closer examination, the facts of *Fillinger* are analogous to the facts of *Greening*. In both cases, the parol evidence rule was inapplicable because extrinsic evidence was not admitted to interpret or modify a written contract. Rather, the written contract was collateral to the dispositive issue of either case. In *Greening*, the dispositive issue was whether a master-servant relationship existed between a newspaper publisher and its carrier. The extrinsic evidence was not admitted in order to modify or interpret the written employment contract between publisher and the carrier, but rather to prove that the newspaper exerted actual control over the carrier. Similarly, in *Fillinger*, the dispositive

issue was whether the insured had requested the specified coverage and whether his agent had misrepresented the fact that that coverage would be provided. Fillinger did not submit the evidence of discussions between himself and his insurance agent in order to "assert that the [written insurance policy] was other or different in any respect from that which the writing expressed." *Fillinger,* 283 Mont. at 82, 938 P.2d at 1347. Rather, he submitted the evidence of oral discussions to prove that his insurance agent had not exercised due care in obtaining the policy because the policy did not contain the coverage he had requested and that the agent had assured him would be provided. In fact, Fillinger relied on the precise terms of the written insurance policy to prove that his agent did not acquire the coverage he had requested.

¶22 As is clear from a discussion of the stranger exception line of cases, the issue of whether a party to an unambiguous integrated writing may submit extrinsic evidence to interpret, modify, or contradict its terms when the dispute involves a third party has never been clearly presented to us. There is a diversity of opinion in other jurisdictions regarding whether the parol evidence rule precludes the admission of extrinsic evidence of a written agreement in disputes between a party to the contract and a stranger. *See* 29 Am. Jur. 2d, *Evidence* § 1096. Some jurisdictions hold that "parol evidence can be used to vary or contradict the document when the litigation is between a party to the contract and a stranger thereto." *See, e.g., Neves v. Potter* (Colo. 1989), 769 P.2d 1047, 1054. However, the stranger exception has been soundly criticized as logically unsound by some of the most prominent legal scholars, including Professors Corbin, Wigmore, and Williston. *See* R. W. Gascoyne, Annotation, *Applicability of Parol Evidence Rule in Favor of or Against One Not a Party to Contract of Release*, 13 A.L.R.3d 313 § 2(c) (1967). For instance, Professor Williston observes that the written contract represents the whole truth of the contractual obligations of the parties to the agreement, "no matter . . . who the inquiring party may be. To admit parol evidence, otherwise inadmissible as between the parties themselves, is to permit facts to be shown which have no relevance to the issue of what is the contract." 11 *Williston on Contracts* § 33.10, at 602 (4th ed. 1999).

¶23 Other jurisdictions hold that the parol evidence rule precludes the admission of extrinsic evidence when the rights and duties created by the document are the dispositive issue. *See, e.g., Akamine & Sons, Ltd. v. American Sec. Bank* (Haw. 1968), 440 P.2d 262; *Oxford Commercial Corp. v. Landau* (N.Y. 1963), 190 N.E.2d 230. We believe that applying the parol evidence rule in disputes between parties and strangers when the terms of the contract are the dispositive issue to be the better rule. As the Hawaii Supreme Court stated in *Akamine & Sons*:

An examination of the parole evidence rule requires us to apply it in any case where the issue involved is what rights or duties were created by the instrument. The parole evidence rule is a principle of substantive law and not a rule of evidence. As a rule of substantive law, it determines the parties' legal enforceable contractual obligations. . . . Once the parties execute an instrument which contains their whole agreement, their previous negotiations and agreements are legally ineffective and evidence relating to those previous negotiations or agreements is irrelevant regardless of who offers it.

*Akamine & Sons*, 440 P.2d at 265-66 *(citations omitted). We agree with this reasoning.*

¶24 While it is true that in cases such as *Fillinger* and *Greening*, extrinsic evidence may be admissible between a party to a written contract and a stranger pursuant to the rules of evidence when the writing comes into question collaterally, we now hold that the parol evidence rule generally precludes the admission of extrinsic evidence of an unambiguous integrated writing in any situation involving either parties or strangers to the instrument when the rights and duties created by the document are the dispositive issue. The parol evidence rule is a principle of substantive contract law and not a rule of evidence; as such its application determines the extent of legally enforceable contractual obligations. *See Norwest Bank Billings v. Murnion* (1984), 210 Mont. 417, 424, 684 P.2d 1067, 1071. According to the parol evidence rule, the extent of the legally enforceable contractual obligations contained in an unambiguous integrated written agreement are to be determined with reference to the writing itself and not with reference to extrinsic evidence of prior or contemporaneous agreements. *See* § 28-2-904, MCA.

¶25 In the case at hand, the dispositive issue of the Swansons' counterclaims for trespass and conversion is whether their 1984 written contract with Cenex provides them with title to the disputed pipeline. If the 1984 contract does not provide the Swansons with title to the disputed pipeline, their counterclaims must fail. As the District Court correctly concluded, the 1984 contract between the Swansons and Cenex clearly and unambiguously does not grant the Swansons title to the disputed pipeline. By submitting extrinsic evidence to prove that the 1984 contract includes the disputed pipeline, the Swansons are attempting to do what the parol evidence rule expressly forbids-submit extrinsic evidence to "assert that the [1984 contract] was other or different in any respect from that which the writing expressed." *Fillinger,* 283 Mont. at 82, 938 P.2d at 1347. Such an attempt by a party to the contract to introduce evidence that would change the terms of

the contract is prohibited by our parol evidence rule. We see no reason to carve out an exception to the parol evidence rule simply because the Swansons' claim happens to be against a stranger to the written agreement.

¶26 We conclude that the District Court correctly determined that the contract between the Swansons and Cenex clearly and unambiguously did not convey the disputed section of pipeline; the extrinsic evidence submitted by the Swansons to prove otherwise is inadmissible.

¶27 Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

Justice Terry N. Trieweiler, concurring.

¶28 I concur with the result of the majority opinion. I do not agree with all that is said therein.

¶29 In particular, I disagree that we have not previously adopted a "stranger to the contract" exception to the parol evidence rule. In *Read v. Lewis & Clark County* (1919), 55 Mont. 412, 178 P. 177; *Greening v. Gazette Printing Co.* (1939), 108 Mont. 158, 88 P.2d 862; and *Fillinger v. Northwestern Agency, Inc.* (1997), 283 Mont. 71, 938 P.2d 1347, this court clearly accepted and articulated the "stranger to the contract" exception. If the majority chooses not to follow that rule of law or to modify it, the prior authorities should be reversed or modified.

¶30 However, I do not believe that any analysis of the "stranger to the contract" exception is necessary in order to resolve the issue raised on appeal. The dispute in this case is over

pipeline sold by Cenex to Glen Habets. Swansons contend that the same pipeline was sold by Cenex to them. However, Swansons concede that they have no enforceable claim to the pipeline against Cenex. Cenex transferred to Swansons only the pipeline referred to in the written contract. The pipeline claimed by Swansons was not included in the written contract. Other than through the transaction with Cenex, Swansons have demonstrated no basis for a claim to the pipeline. They have had no transaction with Habets related to the pipeline. Swansons cite no authority (and I am not aware of any) for the principle that they have a greater claim against a transferee with whom they have had no dealing than with the transferor with whom they dealt. I would conclude they have no greater claim against Cenex's transferee than they had against Cenex.

¶31 For these reasons, I would affirm the judgment of the District Court.

/S/ TERRY N. TRIEWEILER