This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                        **NO. 30,182**

**ELIZABETH MARIE MARTINEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Stephen Bridgforth, District Judge**

Gary K. King, Attorney General
Ann M. Harvey, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
B. Douglas Wood III, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VIGIL, Judge.**

Convicted of twenty-one counts of embezzlement, Defendant appeals. She asserts that the district court abused its discretion in admitting testimony of the State's rebuttal witnesses, admitting evidence of Defendant's silence, and that the evidence was insufficient to support a conviction on each count of embezzlement. We affirm.

## I.     BACKGROUND

The USA Title Loans corporate office, located in Georgia, owns three stores in New Mexico, including a location in Las Cruces. USA Title Loans' locations provide payday loans and title loans to high risk individuals who are unable to secure a loan elsewhere. Anthony Ibarra is the state manager for the New Mexico USA Title Loans stores. In addition to Mr. Ibarra, USA Title Loans employs one "office manager/assistant/customer service representative" for each individual store that handles the daily business activities and is the only employee at the store. Defendant was the office manager/assistant/customer service representative for the USA Title Loans located in Las Cruces.

Mr. Ibarra was contacted by Jerry Staggs from the corporate office in July 2007. Mr. Staggs notified Mr. Ibarra that the Las Cruces store was not bringing in enough money. Mr. Ibarra talked to Defendant, and she told him she had been having some personal issues, but would work harder on collections. One month later, Jerry Staggs again called Mr. Ibarra on two different occasions to express concerns about the Las

Cruces store's income. In response to these calls, Mr. Ibarra conducted an audit at the Las Cruces store on a Saturday when Defendant was out of the office. He found some discrepancies in the computer files, and he returned on Sunday with the Sunland Park office manager, Karinna Cortez, to conduct a more extensive audit. During the audit, they found that many of the computer files had missing information and that certain account histories had been deleted. Upon checking the hard copy files that could be found, they discovered that certain payments had been made and were not included in the computer files. They also found that several of the hard copy files were missing altogether.

After Mr. Ibarra discovered the discrepancies, he attempted to talk with Defendant, and after saying that she did not know the answer to his questions, she eventually said she would not say anything further and left employment with USA Title Loans. Mr. Ibarra called the police after Defendant left and reported a possible embezzlement.

The foregoing testimony and documents showed money was paid by a customer to the Las Cruces USA Title Loans, but the records did not reflect that the money was deposited to the company's bank account. After the testimony and documentary exhibits were presented in a four-day jury trial, Defendant was convicted of twenty-one counts of embezzlement.

## II.    ANALYSIS

Defendant presents three arguments on appeal: (1) that the district court erred in admitting testimony of rebuttal witnesses not disclosed by the State until the third day of trial; (2) that the district court erred in allowing the testimony about Defendant's silence when Mr. Ibarra questioned her about the alleged embezzlement; and (3) that the district court erred in denying her motion for a directed verdict. We address each in turn.

### A.    Testimony of Rebuttal Witnesses

Defendant argues that the district court erred in admitting the testimony of two alibi rebuttal witnesses offered by the State, because the State failed to disclose the witnesses until the third day of trial. The record reflects that the witnesses were located by the State on Tuesday night, the evening of the first day of trial. On the morning of the third day of trial, Thursday, the State notified the court and Defendant that it had located rebuttal witnesses, that they were present and ready to testify, and requested that they be allowed to testify before Defendant's case-in-chief so that the witnesses could be released. However, defense counsel would not agree and specifically requested that the State's rebuttal witnesses testify following Defendant's case-in-chief. The morning of the fourth day of trial, Friday, the defense moved the

court to exclude the rebuttal witnesses on the grounds of late disclosure. The court denied Defendant's motion.

The State presented evidence from Pamela Smith and Isidro Urbina to rebut Defendant's defenses that she was not at work on specific dates when alleged embezzlements were said to have occurred. Pamela Smith testified that she conducted business with Defendant on May 9, 2007, rebutting Defendant's contention that she was not in the office that day because she had to take her daughter to an appointment. Isidro Urbina testified that he conducted business with Defendant the day after Thanksgiving, November 24, 2006, to rebut Defendant's contention that she had the day off because it was the day after a holiday.

Defendant argues on appeal that she was prejudiced by the late disclosure of the witnesses and that the district court abused its discretion in allowing them to testify. The State responds with its argument that rebuttal witnesses are not subject to the disclosure rules, and that even if they are, the district court did not abuse its discretion in permitting them to testify.

"Failure to disclose a witness' identity prior to trial in itself is not grounds for reversal[; rather, t]he objecting party must show that he [or she] was prejudiced by such non-disclosure." *State v. McDaniel*, 2004-NMCA-022, ¶ 6, 135 N.M. 84, 84 P.3d 701 (second alteration in original) (internal quotation marks and citation

5

omitted). "Both the admission of rebuttal testimony and the election of remedies for discovery violations are within the discretion of the court." *State v. Ruiz*, 2007-NMCA-014, ¶ 49, 141 N.M. 53, 150 P.3d 1003. "Abuse of discretion exists when the trial court acted in an obviously erroneous, arbitrary, or unwarranted manner." *State v. Varela*, 1999-NMSC-045, ¶ 28, 128 N.M. 454, 993 P.2d 1280 (internal quotation marks and citation omitted).

We consider the following factors in considering whether late disclosure of evidence requires reversal: "(1) whether the State breached some duty or intentionally deprived the defendant of evidence; (2) whether the improperly non-disclosed evidence was material; (3) whether the non-disclosure of the evidence prejudiced the defendant; and (4) whether the trial court cured the failure to timely disclose the evidence." *McDaniel*, 2004-NMCA-022, ¶ 8 (internal quotation marks and citation omitted).

**1.      Breach of Duty to Disclose by the State**

The State argues that "true rebuttal" witnesses are not subject to the pretrial disclosure rules, because the need for the witness does not arise before trial. *See State v. Manus*, 93 N.M. 95, 103, 597 P.2d 280, 288 (1979) (discussing true rebuttal witnesses and whether they must be disclosed pre-trial), *overruled on other grounds by Sells v. State*, 98 N.M. 786, 788, 653 P.2d 162, 164 (1982). However, Rule 5-

6

508(B) NMRA provides, "[n]ot less than five (5) days after receipt of [the] defendant's witness list or at such other time as the district court may direct, the district attorney shall serve upon the defendant the names and addresses, as particularly as known to the district attorney, of the witnesses the state proposes to offer in rebuttal to discredit the defendant's alibi." *Id.* Further, Rule 5-508(C) states: "Both the defendant and the district attorney shall be under a continuing duty to promptly disclose the names and addresses of additional witnesses which come to the attention of either party subsequent to filing their respective witness lists as provided in this rule." *Id.*

The defense does not challenge the State's assertion that it did not locate the witnesses until the first day of trial. However, we conclude that the State's failure to notify the defense of the witnesses until Thursday morning, after the witnesses had been discovered the Tuesday night of trial was not prompt under these circumstances, because the need for disclosure is immediate when witnesses are going to be presented at a trial that is underway. Thus, we conclude that the State breached a duty to disclose by its failure to timely comply with Rule 5-508(C). However, in spite of this breach, the other factors do not support Defendant's argument that the district court abused its discretion in admitting the witnesses' testimony.

**2. Materiality of the Witnesses' Testimony**

"Whether evidence is material depends on if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *State v. Allison*, 2000-NMSC-027, ¶ 17, 129 N.M. 566, 11 P.3d 141 (internal quotation marks and citation omitted). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* In *Allison*, the State failed to disclose its possession of an arrest record of the defendant until it used the arrest record to impeach the defendant's testimony. *See id.* ¶ 6. The New Mexico Supreme Court concluded that the defendant's arrest record was material evidence, because although it was not exculpatory, it might have affected the defendant's choice to testify and other trial strategies in the face of impeachment evidence. *See id.* ¶ 18.

Defendant argues that, like the defendant in *Allison*, she might not have testified had she known about the witnesses. Further, the substance of the rebuttal witnesses' testimony was to contradict Defendant's alibi defenses after she had testified, reflecting on her credibility in the case, like the impeachment evidence in *Allison*. *See id.* ¶ 17. However, Defendant has failed to show that the result of the proceeding would have been different but for the late disclosure. *See Ruiz*, 2007-NMCA-014, ¶ 52. Unlike *Allison*, where the defendant learned of the evidence when it was admitted

to impeach after the defendant had testified, in this case, Defendant was on notice that the rebuttal witnesses would testify before she presented any evidence in her case-in-chief and had an opportunity to request a continuance to interview the witnesses before presenting any evidence, including her own testimony. Further, defense counsel specifically requested that the witnesses testify *after* Defendant's case-in-chief.

Despite Defendant's claim that she would not have testified had she known about the witnesses, she elected to testify after the witnesses were disclosed by the State. Furthermore, Defendant had an opportunity to interview the witnesses or request a continuance to reform her trial strategy, unlike the situation in *Allison*, where the evidence was presented after the defendant had already testified and was subject to impeachment. *See Allison*, 2000-NMSC-027, ¶ 6. Therefore, we are not persuaded that earlier disclosure of the witnesses would have changed Defendant's trial strategy and thereby change the result of the proceeding. *See id.* ¶ 17.

**3.      Whether the Non-Disclosure of the Evidence Prejudiced Defendant**

In the same line as her argument on materiality of the evidence, Defendant asserts that she was prejudiced by the late disclosure of the witnesses because her trial strategy was affected and she had no opportunity to investigate the rebuttal witnesses and ascertain information regarding the credibility of their testimony. However, rather than taking an opportunity to interview the witnesses or requesting a continuance, the

9

defense relied solely on its argument that the witnesses should be excluded. The district court asked the defense if it had an opportunity to talk with the witnesses, to which the defense replied that no other adequate remedy existed other than to exclude the witnesses, because due to the late disclosure, it was "impossible for [the defense] to adequately cross-examine these witnesses."

However, despite the alleged "impossibility" of the defense to cross-examine the witnesses, defense counsel did cross-examine each, and challenged each witnesses' credibility. Additionally, we conclude that Defendant cannot complain on appeal that the rebuttal witnesses were a surprise that affected her trial strategy and caused prejudice when she learned about the witnesses before she put on her case-in-chief, and she requested no remedial action to ascertain the facts of the witnesses' testimony when she had an opportunity to do so.

**4. Whether the District Court Properly Cured the Failure to Disclose**

The district court did not explicitly offer Defendant any "cure" to the late disclosure of the rebuttal witnesses. However, the district court asked the defense if it had an opportunity to talk to the witnesses, and in response, the defense asked only that they not be allowed to testify. While it would have been preferable for the district court to have offered a continuance to interview the witnesses, we conclude that under these circumstances, the failure to do so does not warrant reversal. The defense had

10

already indicated to the court that an opportunity to speak with the witnesses would be unfruitful from its perspective. *See State v. Smith*, 88 N.M. 541, 544-45, 543 P.2d 834, 837-38 (Ct. App. 1975) (declining to address the defendants' argument regarding the district court's error in admitting the state's late-disclosed evidence because although the defendants objected that the letter had only been provided to the defense the day before, the defendants did not claim surprise at trial, did not ask for a continuance at trial, and did not ask the court to conduct an inquiry into the state's late disclosure). Thus, we conclude that the district court did not abuse its discretion in failing to sua sponte order a continuance. *See State v. Ewing*, 97 N.M. 484, 485-86, 641 P.2d 515, 516-17 (Ct. App. 1982) (affirming the district court's admission of testimony of a witness that had been disclosed but was only located one day before trial and therefore the defendant was not able to interview her, stating that no abuse of discretion occurred because the defendant had notice of the witness and did not request a continuance and "[w]e conclude that, absent a motion for a continuance there is no duty of the trial court to provide one").

We cannot conclude under these circumstances that the district court abused its discretion in refusing to grant the extreme remedy of exclusion of witnesses for the slight delay in disclosure by the State when the State had only located the witnesses two days earlier and the defense had an opportunity to request time to interview the

11

witnesses before it presented any evidence in its case-in-chief. Thus, because the defense had an opportunity to interview the witnesses before presenting its case-in-chief and failed to take advantage of this option or request time to do so from the court, the district court did not abuse its discretion in denying Defendant's motion to exclude the State's rebuttal witnesses. *See State v. Mora*, 1997-NMSC-060, ¶¶ 44-46, 124 N.M. 346, 950 P.2d 789 (explaining that no reversible error occurs where the district court provides a defendant an opportunity to cure a failure to disclose evidence, and the defendant does not avail himself of the opportunity), *abrogated on other grounds by Kersey v. Hatch*, 2010-NMSC-020, 148 N.M. 381, 237 P.3d 683.

**B.     Admission of Evidence of Defendant's Silence**

Defendant asserts that the district court erred in admitting testimony of Defendant's statements when Mr. Ibarra questioned her about the discrepancies. "The admission or exclusion of evidence is within the sound discretion of the district court. Evidentiary rulings are affirmed unless they can be characterized as clearly untenable or not justified by reason." *State v. Ryan*, 2006-NMCA-044, ¶ 42, 139 N.M. 354, 132 P.3d 1040 (internal quotation marks and citations omitted).

Mr. Ibarra testified that he confronted Defendant at the Las Cruces office the day after he and Ms. Cortez performed the audit. He questioned her about the missing information and files, and he said that she gave answers such as, "I don't know" and,

"It should be there."  After repeatedly inquiring about missing files, Mr. Ibarra testified that the following exchange took place:

> Then I told her, 'Well, Beth, you need to give me this information.  You need to tell me what happened to these things.'
>
> 'Well I don't know,' She goes, 'You know what?  I'm not going to say anything more.'
>
> I was, like, 'Beth, if you don't say anything more, then how can you work here anymore if you're not going to tell me what happened.'

Mr. Ibarra then testified that "She said, 'I'm leaving'" and she did, in fact, leave the business, ending her employment with the company.

Defendant asserts that Mr. Ibarra's testimony regarding her refusal to answer his questions infringed upon her right to remain silent, and thus, the district court abused its discretion by allowing the testimony.  The Fifth Amendment to the United States Constitution provides that no person shall be compelled "in any criminal case to be a witness against himself."  U.S. Const. amend. V.  Likewise, Article II, Section 15 of the New Mexico Constitution provides that no person "shall be compelled to testify against himself in a criminal proceeding."  N.M. Const. art. II, § 15.  Thus, prosecutors are prohibited from commenting upon or eliciting testimony pertaining to (1) a defendant's refusal to testify, or (2) a defendant's silence or invocation of his right to remain silent after *Miranda* warnings when he is subject to a custodial

13

interrogation. *See State v. Gutierrez*, 2007-NMSC-033, ¶ 11, 142 N.M. 1, 162 P.3d 156.

Defendant was under no criminal investigation until *after* Defendant had refused to answer Mr. Ibarra's questions, left the workplace, and Mr. Ibarra had called the police. Further, the evidence indicated that Mr. Ibarra was acting on behalf of his private employer when he questioned Defendant and was in no way a government actor. *See State v. Santiago*, 2009-NMSC-045, ¶¶ 24-25, 147 N.M. 76, 217 P.3d 89 (discussing that a private actor does not act on behalf of the government to invoke constitutional protections from unlawful search and seizure where he has an independent motivation to conduct a search, such as in the context of a security guard aiding his employer).

Neither of the circumstances of improper comment on a defendant's right to remain silent are at issue in this case. Defendant chose to testify at trial and was not subject to custodial interrogation when she refused to answer Mr. Ibarra's questions. *See State v. Adam J.*, 2003-NMCA-080, ¶ 17, 133 N.M. 815, 70 P.3d 805 ("'[B]ecause state action is a prerequisite to application of constitutional protections, it is clear that *Miranda* does not govern interrogation by private citizens acting on their own[.]'" (alterations omitted) (quoting 2 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 6.10(b) (1984)). Our rules of evidence explicitly allow statements of a

14

party, including silence, to be admitted as nonhearsay, provided there is no constitutional concern or other evidentiary rule that forbids admission. *See* Rule 11-801(D)(2) NMRA. The admission of Defendant's statements do not invoke constitutional concerns. We therefore turn to other evidentiary rules to examine the admissibility of Defendant's statements.

On appeal, Defendant argues that her statements were irrelevant under Rule 11-402 NMRA, and cites *State v. Lara*, 88 N.M. 233, 539 P.2d 623 (Ct. App. 1975), for the proposition that her statement should have been excluded under Rule 11-403 NMRA. *See* Rule 11-402 ("Evidence which is not relevant is not admissible."); Rule 11-403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."). In *Lara*, we concluded that testimony from the defendant's brother that commented on the defendant's post-arrest refusal to answer police officer's questions was inadmissible under Rule 11-403. *Lara*, 88 N.M. at 234-36, 539 P.2d at 624-26. We stated: "If [the] defendant's silence lacks significant pro[b]ative value, any reference to [the] defendant's silence has an intolerable prejudicial impact requiring reversal." *Id.* at 236, 539 P.2d at 626. *Lara* further notes: "In most circumstances silence is so ambiguous that it is of little probative force . . . to be admissible, keeping silence must be much more than

ambiguous." *Id.* at 234-35, 539 P.2d at 624-25 (internal quotation marks and citations omitted).

Although Defendant argues on appeal that the evidence should have been excluded under Rules 11-402 and 11-403, she did not preserve these arguments in the district court. Moreover, we conclude that even if Defendant had preserved the argument, the district court did not abuse its discretion in admitting this testimony.

Unlike *Lara*, Defendant was not subject to custodial interrogation by the police when the statements were made. *See Lara*, 88 N.M. at 234-36, 539 P.2d at 624-26. Rather, the statements were in relation to a conversation between private parties and do not raise the same implications of an interrogation by police, and the accompaniment of *Miranda* warnings. *See Miranda v. Arizona*, 384 U.S. 436 (1966). The statements occurred during Defendant's conversation with her employment supervisor regarding the alleged discrepancies, and had relevance and probative value relating to her refusal to answer questions when her job was in jeopardy. *See* Rule 11-801(D)(2) (allowing statements of a party as nonhearsay); *State v. Doe*, 91 N.M. 92, 94, 570 P.2d 923, 925 (Ct. App. 1977) ("'Silence gains more probative weight where it persists in the face of accusation, since it is assumed in such circumstances that the accused would be more likely than not to dispute an untrue accusation. Failure to contest an assertion, however, is considered evidence of acquiescence only if it would

have been natural under the circumstances to object to the assertion in question.'" (quoting *United States v. Hale*, 422 U.S. 171, 176 (1975)).  Furthermore, Defendant testified after the statements were admitted, and she had a full and fair opportunity to explain any ambiguity accompanying the statements.  Accordingly, we conclude that the district court did not abuse its discretion in admitting Mr. Ibarra's testimony.

**C.      Sufficiency of the Evidence**

Defendant challenges the sufficiency of the evidence to convict her on each of the twenty-one counts of embezzlement.  "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to conviction."  *State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515 (internal quotation marks and citation omitted).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (quoting *State v. Baca*, 1997-NMSC-059, ¶ 14, 124 N.M. 333, 950 P.2d 776).  A sufficiency of the evidence review involves a two-step process. *See State v. Apodaca*, 118 N.M. 762, 766, 887 P.2d 756, 760 (1994).  Initially, the evidence is viewed in the light most favorable to the verdict. *See id.*  Then, the appellate court must make a legal determination of "whether the evidence viewed in this manner could justify a

17

finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted).

The jury was instructed that to find Defendant guilty of embezzlement it must find the following elements for each of the twenty-one counts of embezzlement:

> 1. [D]efendant was entrusted with U.S. Currency. This U.S. Currency had a market value of over [$250 for counts 1, 3-5, 8, 10, 11, 13-19; $500 for counts 6, 7, 9, 20, 21, or "$250 or less" for counts 2 and 12 and];
>
> 2. [D]efendant converted this U.S. Currency to [D]efendant's own use. 'Converting something to one's own use' means keeping another's property rather than returning it, or using another's property for one's own purpose;
>
> 3. At the time [D]efendant converted this U.S. Currency, [D]efendant fraudulently intended to deprive the owner of the owner's property. 'Fraudulently intended' means intended to deceive or cheat;
>
> 4. This happened in New Mexico on or about the [specific date of each count].

The jury was also instructed that it must find that Defendant acted intentionally when she committed the crimes and that each element must be proved beyond a reasonable doubt.

Defendant's argument that insufficient evidence existed for her convictions rests on her assertion that all that was proved by the State at trial was Defendant's opportunity to embezzle, not that she had exclusive access and opportunity. However,

18

exclusive access is not an element that must be proved to convict a defendant of embezzlement. *See* UJI 14-1641 NMRA. Rather, under the criminal embezzlement statute and jury instructions, the State was only required to present evidence from which the jury could find that Defendant was "entrusted" with U.S. currency, and converted that currency to her own use, among the other elements. *See* UJI 14-1641; NMSA 1978, § 30-16-8 (2007). Exclusive access is not required to prove entrustment or conversion of the currency. *See State v. Kovach*, 2006-NMCA-122, ¶ 9, 140 N.M. 430, 143 P.3d 192 ("'Entrustment' occurs when property is *committed or surrendered* to another with a certain confidence regarding the care, use, or disposal of that property.'"); UJI 14-1641 ("Converting something to one's own use means keeping another's property rather than returning it, or using another's property for one's own purpose [rather than] for the purpose authorized by the owner." (internal quotation marks omitted). Furthermore, sufficient evidence was presented in Defendant's case upon which the jury could have reasonably concluded that Defendant was entrusted with U.S. currency and converted that currency to her own use as to each count without evidence of exclusive access to the customer's money by Defendant.

Dated receipts of payments by customers were admitted as exhibits, evidencing that customers paid Las Cruces USA Title Loans a certain amount on a specific date. The USA Title Loans' employee who takes the payment from the customer paying off

a loan was trained to sign the receipt. Mr. Ibarra identified Defendant's signature on one of the customer's "paid in full" receipts in the "manager's signature" line. A similar signature appeared on the receipts presented for counts one, two, four, six, seven, eight, ten, thirteen, sixteen, seventeen, eighteen, twenty, and twenty-one. *See State v. Rotibi*, 117 N.M. 108, 112-13, 869 P.2d 296, 300-01 (Ct. App. 1994) (concluding that the evidence was sufficient for the jury to infer that a defendant signed forged checks based on circumstantial evidence in the case, even though a handwriting expert was not presented by the state). The rest of the receipts had no manager's signature at all: some of the title loan receipts having left the "manager's signature" line blank, and the others being payday loans that had no place for the manager to sign. Four of the customers whose money had allegedly been embezzled identified Defendant at trial as the person they paid on the date of the alleged embezzlement, and two witnesses stated that Defendant was working at Las Cruces USA Title Loans the dates of two of the alleged embezzlements.

Further, testimony indicated that Defendant was the only employee who handled the Las Cruces office transactions, unless she was out sick and someone was covering for her. The only other persons who worked at the Las Cruces store were Karinna Cortez and Anthony Ibarra. Mr. Ibarra testified that he and Ms. Cortez were not working at the Las Cruces store on the dates of all of the alleged embezzlements

20

except with respect to counts four and six. However, the exhibits presented for counts four and six included the signature that Mr. Ibarra had previously identified as Defendant's on the customer's receipts. Further, Ms. Cortez testified that she might have covered for Defendant once in a while, but did not remember it being very often.

Defendant also challenges that without exclusive access, the State failed to present sufficient evidence that Defendant was the individual who converted the money to her own use. Documents and testimony were presented that Defendant was responsible for preparing logs and spreadsheets reflecting the money that had been paid by customers on a given date. The documents for the bank deposits on each day of the alleged embezzlements were introduced into evidence, showing that the money paid by a customer on the date of the receipt was not listed as being received by the company with the other transactions that were paid on the same date at the Las Cruces store. Mr. Ibarra also corroborated this evidence by testifying that the money paid by customers on the dates of the receipts was not reflected on the company's list of payments collected and were not deposited in the bank account. Further, evidence was also presented that the company's corporate officer notified Mr. Ibarra that the Las Cruces store was not bringing in enough money during the period of the alleged embezzlements.

Although no direct evidence was presented that established that Defendant was the person who took the customer's money, sufficient evidence was presented to the jury to infer that Defendant was entrusted with U.S. currency on each of the dates of the alleged embezzlements, and that she did convert that money to her own use, despite her assertion that she did not have exclusive access to the customer's money at the Las Cruces USA Title Loans.

Defendant presented testimony from witnesses and exhibits that she was out of work for five of the dates on which the embezzlements were alleged to have occurred at Las Cruces USA Title Loans. These were November 24, 2006 (count one), February 19, 2007 (count five), May 9, 2007 (count ten), July 11, 2007 (count seventeen), and August 29, 2007 (count twenty). The State presented witnesses to dispute three of these dates by testifying that they paid Defendant money on that date. However, two of the dates, February 19, 2007 (count five) and July 11, 2007 (count seventeen), were not disputed by any State's witness claiming to have made payment to Defendant. Therefore, Defendant asserts that the State specifically failed to present sufficient evidence for embezzlement on these counts due to its failure to rebut her evidence.

While Defendant may have presented testimony that she was not at work, the jury was under no duty to accept that testimony as true, and was so instructed. *State*

*v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts."). Further, sufficient evidence was presented from which the jury could infer that Defendant was entrusted with the customer's money based on the evidence that Defendant was typically the individual running the Las Cruces store, and Mr. Ibarra's testimony that he and Ms. Cortez were not at the store on February 19, 2007, and July 11, 2007. *See Mora*, 1997-NMSC-060, ¶ 27 ("The reviewing court does not weigh the evidence or substitute its judgment for that of the fact finder as long as there is sufficient evidence to support the verdict."). Thus, we conclude that sufficient evidence was presented for the jury to infer that Defendant was entrusted with the money on February 19, 2007, and July 11, 2007, despite the State offering no rebuttal witness to Defendant's alibi defenses for those counts. *See State v. Bankert*, 117 N.M. 614, 618, 875 P.2d 370, 374 (1994) ("A conviction will be upheld if based upon a logical inference from circumstantial evidence.").

Defendant does not challenge the sufficiency of evidence to support the other elements on appeal, and we therefore do not analyze them. Based upon the foregoing, we conclude that sufficient evidence was presented from which the jury could infer that Defendant committed each count of embezzlement.

**IV.    CONCLUSION**

The judgment and sentence are affirmed.

**IT IS SO ORDERED.**

_____

**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____

**CELIA FOY CASTILLO, Chief Judge**

_____

**JONATHAN B. SUTIN, Judge**